# CHARLESTON.

## MILLER v. INSURANCE CO.

Submtted January 20, 1903—Decided December 5, 1903.

1. FIRE INSURANCE—*Policy—Cancellation.*

    A fire insurance policy gives right to the company to cancel it on five days notice. The company instructs its local agent to take up the policy for cancellation, and the agent informs the assured that the company elected to cancel the policy, and stated to him that he would procure him a policy in another company for which he was agent. The assured with this understanding delivered up the policy to the agent for cancellation, and the agent delivered it to the company, and it was canceled by it. *Held,* that the policy was thereby cancelled. (p. 346-348).

2. FIRE INSURANCE—*Policy—Cancellation.*

    An insurance agent directed by his company to 'take up for cancellation a policy of insurance has no power to take it up with a condition that he would get for the assured a policy in another company, and the surrender of the policy to such agent for such cancellation on such condition is an absolute cancellation. (p. 348).

Error to Circuit Court, Summers County.

Action by James H. Miller against the Fireman's Insurance Company of Baltimore. Judgment for plaintiff, and defendant brings error.

*Reversed.*

PEYTON & PERKINSON and NORTHCOTT, PERRY & McCOMAS, for plaintiff in error.

MILLER & READ, for defendant in error.

BRANNON, JUDGE:

J. B. Lavender agent for the Fireman's Insurance Co. of Baltimore, at the town of Hinton, issued to James H. Miller, its insurance policy for the sum of one thousand dollars insuring said Miller against loss by fire on certain books and office furniture in his law office in said town of Hinton for the period of three years, for which the premium was fully paid to said Lanvender. On December 19, 1900, J. B. Lavender went to

James H. Miller and told him that the Fireman's Insurance Co. was going out of business in West Virginia and wanted him to procure a return of said policy for cancellation; and told Miller that if he wished he would give him another policy in another company as good without additional cost. And Miller in his testimony says that "with this understanding, I gave him the policy."

Thereupon said policy was delivered by said J. B. Lavender to U. O. Michaels, special agent of said insurance company, who was in the town for the purpose of taking up and canceling policies, which fact was told Miller; and said policy was thereupon canceled and destroyed by said company, and said Lavender given credit for the proper amount of return premium.

Afterwards, on the 3rd day of September, 1901, the property which had been embraced in said policy was destroyed by fire; and then Miller enquired of said Lavender if he had ever issued him any new insurance upon said property; and finding that he had not, set about to make proofs of loss under the destroyed policy in defendant company, and on the 9th day of November, 1902, instituted action in the circuit court of Summers county, wherein a judgment was rendered in favor of plaintiff, Miller, for the sum of $925.00, from which this writ of error is prosecuted.

There is but one contention of importance in the case, and that is as to whether or not the policy sued upon had, prior to the loss complained of, been canceled.

It is contended by the defendant that the surrender of the policy to Lavender amounted to an agreement to surrender the policy for cancellation and constituted a waiver on the part of the insured to have the notice given him which was provided in the policy, and the payment to him of the return premium as provided for therein.

On the other hand, it is contended by plaintiff that the circumstances under which said policy was returned through Lavender to the company, for cancellation amounted to nothing more than a conditional surrender; and that the condition upon which the surrender was made was not complied with prior to the time of the loss. Lavender was agent for several companies. Miller's statement in evidence is: "One evening Mr. Lavender came into the office, and told me that the company was going

to quit business here, that their special agent Mr. Michaels, was in town, and wanted to take up my policy. He said if I wished he would give me another policy in another company as good, without any additional cost. With this understanding, I gave him the policy."

The policy gave the company right to cancel on notice. Miller waived notice, assented to cancellation, asked no notice and gave up the policy with final intent, because he knew that the local agent received it for the very purpose of delivering it as a surrendered policy to the general agent then in the town to take up policies. It could be canceled by consent without notice. See *Ins. Co.* v. *Johnson,* 105 Fed. 286... To show further that Miller considered it a cancellation, he lay nine months without mention of any condition as annexed to the cancellation to the company, so that it might take steps to protect itself, and never inquired of the agent for a policy in another company. Strange that he should thus be silent so long, if he had made only a conditional surrender. "Acts speak louder than words." Miller claims that he surrendered the policy with the condition that Lavender should procure him a policy in another company; but he knew that while Lavender had authority to cancel, he had no color of authority to make a conditional cancellation, one leaving the company still liable He had either to surrender or not surrender the policy; he could not make a surrender upon such condition; as he surrendered, it was a surrender freed of condition. Dealing with an agent, he was bound to know his limited authority. Otherwise who would be safe from an agent's unauthorized act? In making such a condition (it was not such) the agent would be acting to the harm of the principal. Apply here the rule in *Rohrbough* v. *Express Co.,* 50 W. Va. 149, section 6, and we find that he could not do so, and that Miller was bound to know this. "The powers of an agent must be exercised for the benefit of his principal only, and when he acts otherwise, with the knowledge and participation of the person relying upon his unauthorized act, his principal is not bound." What benefit did the company get from this condition? It was to its harm, because it kept the company still bound. The sufficient answer to this theory of conditional surrender is, that the parties could not make such a condition. That condition would be a contract, which the agent had no right to make.

But if the parties could make such condition, they did not
do so. It was no condition, but an independent agreement be-
tween Miller and Lavender, unknown to the company, with which
it had nothing to do. The cancellation was one thing
between certain parties; the procuring of new insurance
was another thing between other parties. Miller sur-
rendered the policy, and appointed Lavender his own agent
to get another policy, leaving part of the premium in his hands
to pay for another policy; otherwise he would have demanded it.
In *Hillock* v. *Traders Co.,* 54 Mich. 531, a general agent went to
the place where a policy had been placed and sent the local
agent to the insured party to cancel the policy, and this agent
went to the insured party and informed him that the company
had ordered him to cancel the policy, and said "will see if I can
put it in some other company for a year", and the insured said
"all right; be sure you put it in good companies." No premium
was returned; nothing said about it. The policy was not actu-
ally surrendered. Judge Cooley delivered a labored opinion
and said: "The dealings of these parties had come to an end
when Brown had responded to the notice of cancellation
that it was all right, and directed the agent to procure new in-
surance. This company was not concerned with what should take
place between Brown and Estee afterwards. Brown was look-
ing to Estee for new insurance and would be entitled to a return
of the premium on failure to obtain it; and Estee would be ex-
pected to bring the amount into their own settlement, as they
saw fit." The syllabus says: "The actual tender of unearned
premium is unnecessary to the cancellation of an insurance
policy, if the minds have met on the point that the policy is to be
canceled; and if the insured directs the insurance agent to pro-
cure other insurance, it is presumable that he means him to use
for the purpose the money that he would have to return, and the
direction would be a waiver of such tender." It was held that for-
mal surrender of the policy was not necessary. Here there was a
formal surrender. Miller made no actual condition. His words
did not so import. Why did he not retain the policy until a new
policy should be delivered, if he made it a condition? In the
case of *Hopkins* v. *Phoenix Ins. Co.,* 78 Iowa 344, 43 N. W.
Rep. 197, after reciting the following facts: "A policy provided
that it might be terminated at any time on notice to the insured

and refunding or tendering a ratable proportion of the premium for the unexpired term. The evidence showed that the company's local agent acting under instructions notified the insured that the policy was canceled; that assured carried the policy to their office to surrender it, but defendant's agents did not call for it; it was not delivered, and that assured began negotiations for other insurance." *Held,* that those facts were sufficient to justify a finding that the policy had been canceled; and held further that, "The assured having acquiesced in the cancellation, though no payment of the premium or tender of the premium was made, is estopped to set up the non-payment." "A policy which in terms provides that it may be terminated at any time at the option of the company, is avoided from the time when the insured has notice that the local agent has received instructions that it would be no longer liable. In such case direction to the agent to cancel the policy is, when communicated to the insured, as effectual to terminate the risk as would be the most express notice that the policy had been terminated." *Springfield Co.* v. *McKinnon & Call,* 59 Texas 507. The moment Miller knew that the company elected to cancel and he surrendered the policy, that moment liability ceased. No condition could be made. Miller made this law more emphatic still by giving up the policy. The case of *Holden* v. *Putnam,* 46 N. Y. 1, does not apply. It holds: "One party to a contract is not estopped from enforcing it by the execution of an instrument purporting to cancel the contract for a consideration where none in fact is received by him, and the act is induced by false representation of the agent of the other party." The agent got the cancellation by falsely stating that he had already obtained other insurance. No cancellation existed because of this downright fraud. It was an instrument procured by fraud, and had no legal effect.

Estoppel. Can Miller allow the company to rest in confidence for nine months, the policy all the time in its possession, having allowed the agent money to return the premium, and then for the first time after the fire set up a claim?

It was error to allow Miller to say he dealt with Lavender as defendant's agent as to the new insurance, giving his mere opinion of his own action.

Under these principles instruction 1, that the acts of an in-

surance agent within the scope of his authority bind the company, while good in the abstract, had no relevancy to the case, and was misleading to the jury. The authority of the agent was not at all in question except as to making the so-called condition (there was none), and there was no evidence at all tending to show authority for that.

The plaintiffs instruction 2 is bad, because it tells the jury that the policy could not be canceled without mutual consent, unless the right be reserved, in it to cancel, and if reserved could only be done according to its terms, which must be strictly complied with, unless waived, and if waived on a condition, that condition must be complied with. There is a power of cancellation in the policy. The instruction misleads by saying the terms of cancellation must be complied with, intending to rely on want of notice, when the evidence clearly showed waiver and consent cancellation; and it introduced the so-called condition into the case, as it could refer to no other condition than that, when in fact there was no condition, and if there had been one between Miller and Lavander, it would not bind the company. The instruction did not fit the case as presented by the evidence in law or fact, and was misleading. No. 3, is bad for substantially similar reasons. It also said there must be return of the premium when the evidence showed that Miller left it in the hands of Lavender to buy insurance in another company. It was an arrangement between them. No. 4, is bad for similar reasons. It was also misleading. The evidence did not warrant it. I think these instructions contain elements inconsistent with defendant's instruction given.

The court refused defendant its instruction 1 to the effect that if Lavender applied to Miller to deliver him the policy, telling Miller that he had been instructed by the company to take up the policy, and that Lavender was agent for other companies, and Miller knew he was, and Lavender said he would write Miller insurance in place of this policy, in another company and Miller delivered to Lavender the policy in suit, then the delivery of the policy to be taken up by the company, and the delivery of the policy under such circumstances was a waiver of the clause providing for five days' notice of surrender and payment of return premium. Under principles above stated this instruction should have been given.

Defendant's No. 2 was refused. It should have been given. It says that if Lavender for the company asked surrender of the policy for cancellation, and that Lavender was agent for other companies, and Miller knew it, and he promised Miller to write other insurance without additional cost, then the surrender of the policy under such circumstances amounted in law to a waiver of five days notice of cancellation, and the promise of Lavender to get other insurance could not make him agent of the defendant, but the agent of another company, and his promise would not bind the defendant.

The court refused defendant's instruction 4, to the effect that if the agent Michaels directed Lavender to cancel the policy, and Lavender applied to Miller for the surrender of the policy for cancellation, and that Lavender was agent for other companies and that Miller knew this, and Lavender stated that he would write Miller insurance in lieu of the policy in suit in another company represented by him without further cost, and then Miller surrendered the policy and relied on Lavender to write him insurance in another company, and made no further inquiry of Lavender as to whether such other policy had been issued, and demanded no such policy prior to the fire, and after the fire did inquire of Lavender whether he had issued such new policy, and searched himself for such policy, but found none, then Miller was estopped to deny that he surrendered the policy in suit and the same was canceled before the fire. This instruction ought to have been given. Is it possible that Miller could, when told by the company that it desired the surrender of the policy for the very purpose of cancellation, waive notice by not demanding it, surrender the policy, agree to look for insurance through his agent chosen to secure such new insurance, knowing that the company had possession of the policy and regarded it as surrendered for cancellation, and negligently rest for months without a hint of dissatisfaction to the company, and thus lull it into a feeling of security, and after the fire, for the first time, seek to put the loss upon the company? Would not this action and negligence on his part estop him from doing so? Why did he not let the company know that he deemed the policy still in force, and thus enable it to give notice of cancellation? The strong fact to show that Miller himself regarded the policy as canceled is that after the fire he went to Lavender

to inquire about a policy in another company, and looked for one among his papers. Miller comes squarely out as a witness and says he thought he had a policy until, after the fire, he looked in the safe and could not find it. This shows that he did not look to the defendant's policy. He says he forgot to attend to it. Is the defendant to compensate him for forgetfulness, and negligence, when it has done nothing wrong? If he regarded the defendant company as bound to find new insurance in another company under the alleged conditional cancellation of the policy, why did he not demand the new policy in so long a time? It affords ground to say that he did not look to the defendant to find new insurance.

Judgment reversed, verdict set aside, and new trial granted.

*Reversed.*

DENT, JUDGE, (*dissenting.*) :

In JUDGE BRANNON's opinion, he relies almost wholly on the claim that the defendant's agent had become the plaintiff's agent to secure him other insurance. He rejects plaintiff's evidence entirely on this question, and attempts to infer such agency from the declarations of the plaintiff's agent, whose testimony on the point is as follows: "I stepped into Mr. Miller's office and asked him for the policy, told him that the company had requested me to take it up, told him I would give him another policy, or write him in another company as good, and it would not cost him any more." He made the promise of a new policy before he received the old one, the plain object being to prevent the return of the premium. He neither returned the premium nor requested the plaintiff to sign the cancellation form on the back thereof. He was acting as agent for the defendant. He induced the surrender of the policy without repayment of the premium or cancellation on the false promise of a new policy. Where does the plaintiff's agency come in? Does the deception practised by the defendant's agent with its presumed knowledge transfer such agent from the defendant to the plaintiff, and at the same time authorize the defendant to keep the premium contrary to the stipulations of its policy? The insurance defendant is undoubtedly bound by the misrepresentations of its agent, made to secure the policy without compliance with the terms thereof, or

the return of the premium.  To hold otherwise is to relieve insurance companies from the ordinary rules governing principal and agent.  The principal is bound by the false representations of the agent, though he neither authorized them, nor was informed of them.  *Crumb* v. *U. S. Mining Co.,* 7 Grat. 352; *Honaker* v. *Board of Education,* 42 W. Va. 170; *Curry* v. *Hale,* 15 W. Va. 867; *Sheppard* v. *Peabody Ins. Co.,* 21 W. Va. 368; Mecham on Agency, section 739; *Hern* v. *Nichols,* 1 Salk 289; *Filzherbert* v. *Mather,* 1 T R. 12; *Locke* v. *Sterns,* 1 Metc. (Mass.) 560; *Bank* v. *Kimberlands,* 16 W. Va. 555.

Because defendant's agent did induce plaintiff to turn over the policy to him without refunding the premium, by falsely promising to furnish him another, in lieu thereof, there is no reason why he should be treated as plaintiff's agent.  To accomplish this, not only must the agent's evidence be strained, but plaintiff's evidence must be rejected altogether.  Plaintiff has a right to deny such agency, and also to testify against the same. There is nothing to work an estoppel against him.  He has the right to say how he dealt with the defendant's agent, and to deny that he gave any commission to him to act in his behalf, and also to say what induced him to surrender the policy contrary to its terms.  He has the right to give his understanding of the transaction, and if he is contradicted, it is for the jury to say whether they believe him or not.  The court has no just right to reject his testimony, and then infer from circumstances that do not justify it that plaintiff adopted the defendant's agent as his agent.  The fact that the defendant is an insurance company does not justify a departure from the ordinary rule governing similar cases.  On the question of the necessity of the return of the premium, the rule is stated to be that as a condition precedent to the cancellation of the policy in addition to giving the necessary notice, the insurer must return or tender the unearned premium.  But where the policy does not require the prepayment of the unearned premium, it is but an incident not effecting the main object, and therefore it is not prerequisite.  16 Am. & En. En. Law (2 Ed) 875; *Southern Ins. Co.* v. *Williams,* 62 Ark. 382; *Manlove* v. *Ins. Co.,* 47 Kan. 309.  In the latter case, it was held that: "The acts of the insurance company in deciding to close up its business and notifying the plaintiffs that the company would not be liable on its policies issued to them, without

returning to the plaintiffs the unearned cash premium paid by them to secure said policies, did not operate as a cancellation of said policies." The policy in controversy provides that, "If this policy be canceled as hereinbefore provided * * * * * * * the premium having been actually paid, the unearned portion shall be returned on surrender of this policy." Thus making the return of the unearned portion of the premium a condition precedent to the surrender of the policy. The plaintiff was induced to waive this obligation of the policy on the representation of the defendant's agent that he would furnish another policy without additional expense. The defendant undoubtedly had complete notice of this representation for it retained the premium and received the policy without requiring the plaintiff to sign the cancellation receipt blank on the back thereof. In short, it was a party to the false promises of its agent, that induced the surrender of the policy without repayment of the unearned premium and received and enjoyed the benefits of such false promises. It is said, however, that plaintiff was guilty of *laches* in not calling attention to the matter until after his property was destroyed by fire. Plaintiff rested under the assurance of defendant's agent that a new policy would be given him in lieu of the old one, and until such promise was fulfilled, he had the right to feel safe under the old policy. It was for the defendant to look after, and make good the promise of its agent, or to notify the plaintiff of the dissolution of such agency. If it had compelled the agent to make good the unearned premium, or required him to procure a release thereof from the plaintiff, he would have been forewarned so as to have been able to secure other insurance. But the defendant trusted its agent, and plaintiff was led to trust him because defendant retained his premium. He believed he was insured, because he had paid for it, and his money was never returned. JUDGE BRANNON's position is that the agent was the defendant's for the purpose of securing the policy and retaining the premium, but plaintiff's agent when he neglected to carry out the promises that secured the policy and the retention of the premium. When he tells the truth he is the defendant's agent; when he makes false promises for the defendant's benefit, he is the plaintiff's. This is wholesome argument for the defendant, who gets the premium without being responsible for the insurance, but it is bad for the plaintiff, who

pays for the insurance, but gets it not. The defendant received and retained the premium for insuring plaintiff's property, and it should be held liable for the loss, unless it can show that the policy was unconditionally surrendered by the plaintiff for cancellation. *Holden* v. *Ins. Co.,* 46 N. Y. 1, (7 Am. Rep. 286) ; 16 Am. & En. En. Law (2d Ed.) 870. This it has failed to do.