GORGE HOTEL CO. v. LIVERPOOL & LONDON & GLOBE INS. CO.

(Supreme Court, Appellate Division, Fourth Department.   November 13, 1907.)

INSURANCE—CANCELLATION—SURRENDER OF POLICY — RETURN OF UNEARNED
    PREMIUM—WAIVER.

Where the insurance agent notified the owner of insured property
that the policies were canceled because of mortgage foreclosure pro-
ceedings, and that the insurer's liability would cease at a certain time un-
less the policies were sooner surrendered, and that the mortgagee had
returned the policies held by him, and stated that on return of policies
unearned premiums would be returned, and the insured then returned
the policies held by him, there was an unconditional surrender, with
waiver of right to have the policies remain in force till repayment to in-
sured of the unearned portion of the premium.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 519.]

Appeal from Trial Term, Erie County.

Action by the Gorge Hotel Company against the Liverpool & London
& Globe Insurance Company.   From a judgment on a verdict for
plaintiff, and from an order denying a motion for new trial, defendant
appeals.   Reversed, and new trial granted.

This action is brought to recover the amount of a fire insurance policy, orig-
inally issued to the plaintiff's predecessor in interest on the 6th day of April,
1904, whereby the defendant agreed for the term of one year to pay to the
insured for all loss or damage caused by fire, to the amount of $1,200, upon a
certain building known as the "Gorge Hotel," located upon the banks of the
Niagara river in the town of Lewiston, Niagara county, in this state.   The
policy contained the usual mortgage clause, making the loss payable to the
mortgagee therein named as his interest might appear.   The plaintiff be-
came the owner of the property on the 2d of May, 1904, and at its request the
defendant made the policy payable to the plaintiff as owner, continuing the
mortgage clause.   The plaintiff also acquired by assignment all the rights of
the mortgagee under the policy of insurance.   There were several policies
of insurance upon the same building, issued by different insurance companies,
but through the same insurance agents, and still others issued through the
same agents upon the furniture and property other than the building.   The
total amount of premium upon all the policies issued by the agents was
$137.50, upon which had been paid and credited generally the sum of $100
before the date of cancellation.   In November, 1904, foreclosure proceedings
were begun on the hotel property, and on the 11th day of November, 1904,
the local agents issuing the policy in question indorsed upon the policy a state-
ment that mortgage foreclosure proceedings had begun on the property.
Thereupon the insurance companies directed the cancellation of all the policies,
and the local agents to whom the policies were issued gave notice accordingly
to the owner and mortgagee.   Such notice of the cancellation of the policy in
question was sent on the 6th day of December, 1904, stating that the liability
of the defendant would cease at noon of December 11, 1904, unless the sur-
render of the policy to the company was sooner made.   A similar notice was
sent at the same time on behalf of all the other companies, canceling their
respective policies at the time set, except, as regards one of the companies,
the notice was sent on the 1st of December, 1904.   The policy in question was
held by the legal representatives of the mortgagee, or their successors in
interest (the mortgagee himself having died prior thereto), at the time of the
notice of cancellation, and the policy was canceled and forwarded by them
to the insurance company at some time prior to the 20th or 21st of Decem-
ber, 1904, as is claimed on behalf of the defendant.   On the 11th day of Janu-
ary, 1905, the property covered by the policy was totally destroyed by fire.
Concededly there was a small general balance due the plaintiff for unearned
premium on December 11, 1904.   On the 10th of January, 1905, the local

agents wrote a letter to the plaintiff, stating that they had obtained all of the policies, and inclosed a statement showing earned and returned premiums under the same, inclosing a check for $4.37 as the balance due the plaintiff, which the local agents conceded upon the trial was a little short of the amount actually due the plaintiff; the amount as claimed by them to be due to the plaintiff being $6.39, while the plaintiff claimed it to be a trifle more than that amount. The check was not received by the plaintiff until after the fire, and was immediately returned to the local agents, being received by them a few days later. The policy was the standard fire insurance policy of this state. At the close of the evidence both parties moved for a direction of a verdict. The trial court held that the policy was still in force at the time of the fire, and directed a verdict in favor of the plaintiff for the amount of the policy. The defendant excepted thereto, and made a motion for a new trial upon the minutes, which was denied. From the order denying the motion for a new trial, and the judgment entered upon the verdict so directed, the defendant appeals to this court.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Horace McGuire, for appellant.
William L. Marcy, for respondent.

KRUSE, J.  The sole question presented upon this appeal is whether the policy in question was unconditionally surrendered to the defendant by the plaintiff, or by its authority, pursuant to the notice of cancellation, thus waiving the plaintiff's right to have the policy remain in force until the company actually paid to the plaintiff the unearned portion of the premium theretofore paid by the insured. We think the evidence conclusively established that there was such a waiver, and that the policy was voluntarily and absolutely surrendered. In Buckley v. Citizens' Insurance Company, 188 N. Y. 399, 81 N. E. 165, after distinguishing the cases of Nitsch v. American Central Insurance Company, 152 N. Y. 635, 46 N. E. 1149, and Tisdell v. New Hampshire Fire Insurance Company, 155 N. Y. 163, 49 N. E. 664, 40 L. R. A. 765, by the fact that the plaintiff had voluntarily and unconditionally surrendered his policy immediately upon receiving notice of cancellation, and holding that such action on the part of the insured was a waiver of his right to treat the policy as in full force until the company paid or tendered to him the unearned premium, the court say:

"The one object of the cancellation clause is to place the policy in the custody of the insurance company absolutely and unconditionally. If the insured permits this to be done by his voluntary act, when the company gives notice of cancellation, without receiving from it the unearned premium, he assents to the cancellation, but can sue for the amount due him."

Upon the trial of the case at bar James F. Murphy, the local insurance agent whose agency issued the policy to the insured, was sworn as a witness on behalf of the defendant, and testified to conversations (which will be presently referred to) which he had with Allison K. Hume, the treasurer of the plaintiff corporation. Hume, although sworn as a witness for the plaintiff, did not deny that the conversation was had between them as testified to by Murphy, nor is there any evidence which contradicts Murphy's testimony in that regard. After sending out the cancellation notices, and on the 7th or 8th of December, 1904, Hume called up on the telephone and wanted to know what

the matter was with the policies being canceled, so Murphy testified. Murphy informed him that it was on account of the notice of foreclosure having been received by the companies, and that they did not like the conditions. Hume wanted to know if Murphy could not get any insurance for him in any of the other companies in his agency, or from any outside source, to which Murphy replied that he could not.

The policy in question was one of the policies payable to Chauncey W. Babcock as mortgagee, and are referred to as the "Babcock policies." Mr. Babcock having died, these policies before the date of the notice of cancellation came into the possession of Mr. Ives, Babcock's executor, or of his attorneys. Murphy received the Babcock policies from Ives, including the policy in suit, and the same were canceled on the books of the company about December 20th, although Murphy did not recall the date. On December 20, 1904, Murphy wrote to Hume, asking him to return two canceled policies, as it was necessary to return the same in order to obtain the return premium due. Murphy testified that the day he received a letter from Hume, dated the 20th or 21st of December, 1904, Hume called him up on the telephone and wanted to know what had been done, how Murphy had received notice of the foreclosure of the mortgage, to which Murphy replied that he had received it from Ives or his attorneys, but that he was very sure it was from Mr. Ives himself, by bringing the policies in to have the notice put on them. Murphy, continuing, testified:

"I asked him if he would hurry up the policies to me, as I would like to get the matter out of the road, and that just as soon as I received the last of the policies I would send him statement that he had asked me for and a check for the return premium, if there was anything coming to him; that there was only a few cents between us anyway, and whatever it was I would straighten it up as soon as I received the last of the policies; and he said he would hustle them along, or hurry them along. Mr. Shapley's name was mentioned over the phone. Mr. Hume asked me if I knew whether the mortgagee had been able to secure any insurance, and I told him that a man from Shapley's office had been down looking at the place, but I understood they were unable to insure it. The man I referred to was a Mr. Wright. He had been in to see me. Mr. Hume did not refer to any particular mortgagee. Our conversation was in relation to the mortgagee, Mr. Ives. I told him I had received the Babcock policies, and had sent them back to the companies for cancellation. He said nothing to that."

On December 28, 1904, Hume wrote a letter to J. F. Murphy Company, the local agents, inclosing the Hartford and Westchester policies, inquiring what notice they had received regarding the foreclosure, and asking for a memorandum of canceled policies. On January 6, 1905, the plaintiff, by Hume as treasurer, wrote to the local insurance agents, referring to the fact that a statement covering canceled insurance had been asked for, and also asking him to advise "who and how formal notice was given you or the companies in regard to the foreclosure which was started against the Gorge Hotel Company," saying further:

"We take it that the policies held by the Babcock estate have been returned to you, or you would have said something to us about it. * * *"

To that letter J. F. Murphy Company, the local agents, replied on January 10th, saying that formal notice was given them of mortgage

foreclosure proceedings by the mortgagee, and stating further that they had at last obtained all of the policies, and inclosed a statement showing earned and returned premiums under same, with a check for $4.37, the amount due. This letter was not received until after the fire, and the check was immediately returned.

We think the conclusion is irresistible that Hume, the treasurer of the plaintiff, well understood that the object of returning the policies to the insurance agents was for the purpose of cancellation; that the delivery of the policy in question by Ives to the local agents for cancellation and surrender was not only effective against the mortgagee, but the plaintiff as well. That it was so understood by Hume is apparent from the conversations in December testified to by Murphy, the accuracy of which is unchallenged, and the correspondence which passed between them. We think, upon the undisputed evidence, the trial court should have directed a verdict for the defendant.

The judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.