# CHARLESTON.

BILLUPS *et al.* v. WOOLRIDGE.

Submitted March 13, 1917. Decided March 20, 1917.

1. TRIAL—*Objection to Evidence—Scope.*

If the testimony of a witness be good in part and responsive, and another part bad and not responsive, objection thereto or a motion to strike out should not be general as to all, but limited to the objectionable part, otherwise the objection or motion should be overruled. (p. 16).

2. BOUNDARIES—*Instructions.*

Where on the trial of the title to land the patent and deeds of plaintiffs call for corners or lines of a senior patent under which defendant claims, and only the junior patent is offered in evidence, and the line in controversy is a common line between the lands of the conflicting claimants, the defendant is not prejudiced by an instruction to the jury telling them that in endeavoring to locate the land described in the patent they should search for the

footsteps of the surveyor in locating the survey upon which the patent was based. (p. 17).

3.  TRIAL—*Instructions—Opinion on Evidence.*

Where on the trial of such action there was only slight variation in the testimony of the witnesses for the plaintiffs as to the exact point where a corner tree not found was in fact located, and the witnesses for defendant tended in some degree to locate the corner at a different place, an instruction to the jury along with other instructions submitting the fact to the jury, and which told them that if they believed the corner stood at the point designated by the plaintiffs' witness and others, was not subject to the objection that it impliedly told the jury that the one witness was corroborated by others as to the location of the corner. (p. 18).

4.  APPEAL AND ERROR—*Harmless Error—Instruction.*

Plaintiffs' instruction number eight in this case, on the subject of adverse possession, if amenable to the criticism of defendant, that it told the jury plaintiffs were owners of the land unless defendant had acquired title by adverse possession, and that it in effect told the jury that possession which is not hostile in its inception can never become so, as applied to the facts in this case, constituted harmless error not warranting reversal of the judgment. (p. 19).

Error to Circuit Court, McDowell County.

Action by Sallie M. Billups and others against Grat Woolridge. Judgment for plaintiffs, and defendant brings error.

*Affirmed.*

*Litz & Harman* and *Joseph M. Crockett,* for plaintiffs in error.

*Anderson, Strothers, Hughes & Curd,* for defendants in error.

MILLER, JUDGE:

In ejectment, of the land sued for, about seventy acres, defendant entered a disclaimer to all except about 3.9 acres.

On the trial plaintiffs obtained a verdict and judgment for all the land sued for, and to that judgment defendant sued out in this court the present writ of error.

The material fact in controversy on the trial was the true location of one of the lines between the adjoining tracts.

Plaintiffs claimed under a patent from the Commonwealth for 777 acres, dated July 1, 1856. It is conceded, and the evidence tends to show that defendant claims under a prior grant from the Commonwealth for a tract of 104 acres, although that patent was not introduced in evidence, the only title papers introduced by defendant being two recent deeds executed to him, one dated November 11, 1907, from J. S. and Mary Brewster, describing by metes and bounds a tract of 104 acres, the other dated January 6, 1910, from Emily C. Myers, describing two tracts, the first calling for 33 1-2 acres, the second for 15 acres, neither of said deeds making any specific reference to the original patent for the 104 acres. The plaintiffs showed a perfect chain of title back to the patent for the tract of 777 acres, and each side offered evidence as to the location of the lines and corners called for, and also on the subject of adverse possession, with the result already indicated.

The land in controversy lies on Big Creek, and the call in the title papers of the plaintiffs for the line in controversy, running from the poplar on the side of a hill near said creek, is "thence S. 40° E. 79 poles crossing Big Creek three times to a large spruce pine and beech opposite the lower end of the Crockett Bottom." This line with the two preceding lines of the 777 acre patent are described as being coincident with the lines of the 104 acre survey; and the two deeds introduced in evidence by the defendant describe the line in controversy in the same way, and as crossing Big Creek three times; so that there is no interlock, and the principal question submitted to the jury was the true location of this boundary line.

The points of error relied on relate to the admission and rejection of evidence, and to certain of the instructions requested by plaintiffs.

The first point is that the court, over defendant's objection, permitted T. R. Myers and W. H. Bowling to testify that John W. Marrs, then deceased, and under whom plaintiffs claimed, had told the witnesses that the property in controversy belonged to him. This objection was based on the rule of evidence affirmed in our cases of *Corbleys* v. *Rip-*

*ley,* 22 W. Va. 154, and *High's Heirs* v. *Pancake,* 42 W. Va. 602, and in certain Virginia cases, to the effect that the declaration of a deceased former owner as to the identity of a particular corner or boundary line of land owned by him, though otherwise admissible, are inadmissible, if at the time they were made the facts and circumstances and his situation show that he had an interest to make false representations respecting the same, and that a mere general statement or claim, without reference to corners or marked lines, that certain land was his land, or where the lines would run, or that he owned the land, are never admissible.

The law of these cases is not controverted; but it is contended that the point of objection is not well founded in the evidence. The question propounded by counsel to T. R. Myers was: "Did your brother, Ballard Myers, ever make any statement to you about the location of that land with respect to his stable through there?" Over objection, the witness answered: "Yes, sir; he said that the stable was partly on John Marrs' land. The bottom extended on up there, and he wanted to buy it, and there was such a little of it Mr. Marrs said it wasn't worth making a deed to, and he could move his fence out and use it as long as he wanted it. He told me so; so did Marrs." That part of the answer relating to what Marrs is supposed to have told the witness is the part now objected to. It will be observed that the question did not call for this part of the answer; and the motion of the defendant to strike out was applied to the whole of the answer and not to the objectionable part of it, and which was entirely voluntary on the part of the witness. In such cases the rule is that if it is desired to correct the error the objection must be limited to the part of the answer or other evidence which is objectionable, otherwise the objection or motion will be properly overruled. *State* v. *Calhoun,* 67 W. Va. 666; *Lynchburg Cotton Mills* v. *Rives,* 112 Va. 137.

This evidence was introduced in rebuttal on the question of adverse possession. Another witness for plaintiffs, F. B. Bailey, testified that Ballard Myers had admitted to him that he had built his barn partly on the John Marrs tract, and that Marrs had given him permission to use it as long

as he owned the land, and that he need not move his barn. This was legal and competent evidence, relating to the same subject, and as to which there was no conflict. It is evident, therefore, that defendant could not have been prejudiced by the error, if error there was, in the admission of a voluntary statement of the witness Myers, for the result would undoubtedly have been the same. *Hannum* v. *Hill*, 52 W. Va. 166; *State* v. *Davis*, 68 W. Va. 142.

Respecting the evidence of the witness W. H. Bowling, of the same character, this evidence was stricken out, upon objection, and no doubt if the objection, or motion to strike out, had been limited to the objectionable part of the testimony of the witness Myers, the trial court would have taken similar action.

On the question of adverse possession the defendant had the benefit of all the evidence offered by himself, and we cannot see that he suffered any prejudice by any ruling or action of the court in relation thereto, certainly none of which he can now complain. This question of adverse possession was submitted to the jury, and their decision seems to have been adverse to the contentions of the defendant.

The next point is that the court erred in giving to the jury plaintiffs' instruction number one. The criticism of this instruction is that it told the jury that in endeavoring to locate the land described in the patent they should search for the footsteps of the surveyor in locating the survey upon which the patent was based. It is argued that inasmuch as the only patent offered in evidence was the patent for 777 acres, and it was junior to the patent for the 104 acres, and the former called for and was limited to the true location of the line of the 104 acre tract, the line in dispute, the instruction was misleading and prejudicial to defendant's interests. Defendant did not introduce the patent for the 104 acre tract, but without objection, the surveyors and other witnesses referred to the calls of the senior patent, and identified the call in the one as alike and coincident with the calls in the other, so far as they relate to the disputed line. Both patents seem to call for the poplar, and as running substantially on the same bearing, crossing Big Creek three times, to

the large spruce pine and beech. The surveyor who located the junior survey, therefore, must have followed substantially in the footsteps of the surveyor of the senior patent or older survey, and the instruction was therefore as much to follow the footsteps of the one as the other. We do not see how defendant was prejudiced by this instruction, nor do we see how under the evidence the verdict of the jury could have been otherwise than it was.

The third point relied on is the giving of plaintiffs' instruction number three. This instruction told the jury, "that in questions of boundary natural objects called for, marked lines and reputed boundaries should be preferred in ascertaining the identity of a tract of land to courses and distances of the calls of the grant or deed. If, therefore, you believe from the evidence that the poplar tree called for in the grant and the deeds introduced in evidence in this case, the location of which is in dispute, stood at the point designated by E. L. Whitley and others, and further believe that the large spruce pine stood at the point designated by the said E. L. Whitley and others, then the line between the said points is the proper location of the line called for in the grant and deeds introduced in evidence, although following the course and distance in said grant and deeds may not take the surveyor to the points where such timbers were located."

The only point made against this instruction is that it impliedly at least told the jury that the witness Whitley was corroborated by other witnesses as to the location of the poplar tree and the spruce pine tree, when the other witnesses introduced by plaintiffs did not concur with Whitley as to the exact location of these corners, and that the jury were misdirected and the defendant prejudiced thereby. We have read the evidence of the witnesses carefully and do not find substantial variance between them as to the location of these corners. As the trees were not standing, and the witnesses depended upon their recollection as to their exact location there was likely to be slight variation without substantial difference. We are inclined to regard the objection to the instruction as rather hypercritical. Moreover, the instruction implies that there were other witnesses for the defend-

ant who disagreed with those of the plaintiffs as to the true location of these corners, and the question of fact was one for the jury.

Lastly, it is complained that plaintiffs' instruction number eight was erroneous. It told the jury "that the possession of land which the law protects is open and notorious possession, and not a secret or a furtive possession, and further, that if adverse possession is held without color of title, such possession is limited to the portion actually occupied, and that to constitute adverse possession there must be an actual claim of present ownership, accompanied with possession, and possession with mere intent to claim it in the future is not adverse possession, and that adverse possession must be hostile in its inception and continue uninterruptedly for ten years; it must be open, notorious, adverse, exclusive, and must be held during all of such time under a claim of ownership by the occupant; and all of these facts must be proved by a preponderance of the evidence, and the possession, to be adverse, must be such as was consistent with the nature of the property, and is indicative of an honest claim of ownership, and adverse possession is not proved by inference, but must be proved by clear and positive proof, and to constitute adverse possession it must appear from the evidence that what the adverse claimant did on the land was not with the leave or permission of the owner, but was done under a claim of right in himself, and in hostility to the right of the owner; and if you believe from the evidence that Myers entered into possession of any part of the lands in controversy with the consent of Marrs, the owner, for any other purpose except to claim the land as his own, such possession alone, no matter how long it is continued, will never bar the right of the owner to take possession of his land when he sees fit to do so."

The first point of criticism is that the instruction indicated to the jury that the plaintiffs were the owners of the land in dispute, unless defendant had acquired title by adverse possession. Defendant did not undertake to show title back to the Commonwealth. He introduced in evidence only the immediate deeds to himself. Plaintiffs located the disputed

line as' coincident with that found by the jury, and this not only with reference to the calls of the junior deed or patent but with reference also to the calls of the senior patent, and the defendant seemed to rely largely on the question of adverse possession. The court, at his instance, gave to the jury, an instruction on the subject of adverse possession. We do not think the jury could have been misled to believe that the opinion of the court was that plaintiffs were in fact the owners of the land, the very matter in dispute, and which was submitted to them.

Another point of criticism is that to acquire title by adverse possession, the possession must have been adverse and hostile in its inception, which was in effect to tell the jury that possession which was not hostile in its inception can never become so. We do not think such is the effect of the instruction. As applied to the evidence in this case we think the instruction propounded correct legal propositions. As stated defendant offered no title papers except the immediate deeds to himself, which by their calls limited him to a line running from a poplar and crossing Big Creek three times, or to a stake in the center of the creek at the last crossing, and which the jury located according to the contention of the plaintiffs. There was no evidence of adverse possession on any of the land found for the plaintiffs, which continued for a sufficient time, or would give notice to the plaintiffs of any adverse holding, and not permissive on the part of the plaintiffs, or those under whom they claim.

For the foregoing reasons the judgment will be affirmed.

*Affirmed.*