# CHARLESTON.

### A. J. HUFF *v.* COLUMBIA INSURANCE COMPANY.

### Submitted October 16, 1923.   Decided October 30, 1923.

1.  INSURANCE—*Finding That Policy Was in Force at Time of Loss Held Sustained.* .

    Upon application of plaintiff to an insurance agency for a fire insurance policy covering his stock of Merchandise, the agency, as broker, secured the issuance and delivery of the policy by the defendant company. Plaintiff subsequently applied to the agency for additional insurance on certain buildings owned by him; and pending this application the agency, having been requested by an agent of defendant to secure the policy for cancellation, wrote plaintiff as follows:

    > "In accordance with our visit we have taken up with the companies the matter of insurance, and instead of writing three different policies, the companies prefer cancelling the one you have on the stock of goods, and issuing new policies altogether on your stock, your new dwelling and office building in the rear, and the amount you asked for on old part of dwelling and household goods.
    > "Upon this advice, we herewith enclose cancellation notice of the $4,000.00 on stock written in No. 585394 Columbia Insurance Company. Immediately upon receipt of this policy cancellation notice, please mail us the policy and we will go to work to place you in another company. Now the way to keep protected, is to act promptly upon the request of the company. and this can be done by sending us the cancelled policy by return mail."

    Plaintiff immediately mailed the policy to the agency with the following reply:

    > "I enclose policy, as requested. I have dwelling completed now. I want ins. on dwelling & store. Send agent to see promptly."

    On receipt of the policy the agency forwarded it to the agent of defendant, who indorsed the same "cancelled". Thereafter, and within five days from the receipt by plaintiff of the agency's letter, a loss exceeding the amount of the policy occurred.

    A finding by the jury that the policy was in force at the time of the fire should not be disturbed. (p. 665).

2.  SAME—*Soliciting Agent Has No Implied Authority to Bind Insurer by Accepting Surrender of Policy.*

    There is no implied authority on the part of a soliciting agent, or the broker who procures the insurance, to bind the insurer by accepting a surrender of the policy. (p. 672).

3. SAME—*Assertion by Agent After Fire and Within Time for Filing Proof of Loss, That Policy Had Been Cancelled, Held to Constitute Waiver of Proof of Loss.*

The assertion, after fire and within the time authorized for the filing of proof of loss, by the insurer or its agent empowered to issue policies, collect premiums and make renewals and cancellations, that the policy covering loss by fire had been cancelled at a time antedating the fire, constitutes a waiver of proof of loss.   (p. 673).

4. TRIAL—*General Objection to Evidence, Admissible for One Purpose, but Improper for Another, Should be Overruled.*

A general objection to evidence, admissible for one purpose but improper for another, should be overruled.   (p. 674).

Error to Circuit Court, Mingo County.

Action by A. J. Huff against the Columbia Insurance Company.   Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Mooney, Bibbee & Edmonds,* and *Goodykoontz, Scherr & Slavin,* for plaintiff in error.

*Hubert Quesinberry* and *Bias & Chafin,* for defendant in error.

LITZ, JUDGE:

This writ of error was awarded to the judgment of the circuit court of Mingo county for $4000.00, rendered February 3d, 1923, upon the jury's verdict of that date in favor of the plaintiff against defendant, under a notice for judgment by motion, on a fire insurance policy issued to plaintiff by defendant.

The defendant, whose home office is in the city of New York, on November 15th, 1921, through its agent S. H. Young, at Huntington, West Virginia, issued to plaintiff a fire insurance policy, for $4000.00, to continue one year, covering on merchandise constituting plaintiff's stock in trade as a retail merchant in the town of Kermit, Mingo county. In early November, 1921, Scaggs Brothers' Insurance Agency, of Wayne, West Virginia, representing five insurance companies, through James Perry, their local solicitor, at Kermit, received from the plaintiff an application for a fire insurance

policy of $4000.00 to cover this stock of merchandise. The application having been forwarded to S. H. Young, at Huntington, for consideration, he, as agent of defendant, immediately issued the policy and sent it to Scaggs Brothers' Insurance Agency for delivery. The agency, on receiving the policy, promptly made delivery and collected the premium.

About January 1st, 1922, plaintiff applied to James Perry, who still represented Scaggs Brothers' Insurance Agency, for $1800.00 fire insurance on a house of plaintiff then under construction at Kermit. A few days later the plaintiff discussed with Fisher Scaggs, a member of the agency, while visiting Kermit, the matter of obtaining the building insurance. Thereafter the agency mailed plaintiff the following letter:

"January 15, 1922.
"Mr. A. J. Huff,
     "Kermit, W. Va.
"Dear Sir:
     "In accordance with our visit, we have taken up with the companies the matter of insurance, and instead of writing three different policies, the companies prefer cancelling the one you have on the stock of goods, and issuing new policies altogether on your stock, your new dwelling and office building in the rear, and the amount you asked for on old part of dwelling and household goods.
     "Upon this advice, we herewith enclose cancellation notice of the $4,000.00 on stock written in No. 585394 Columbia Insurance Company. Immediately upon receipt of this policy cancellation notice, please mail us the policy and we will go to work to place you in another company. Now the way to keep protected, is to act promptly upon the request of the company, and this can be done by sending us the cancelled policy by return mail.
                    "Yours very truly,
                         "Scaggs Bros. Ins. Agency."

Fisher Scaggs, as a witness for defendant, testifies that on January 15th, 1922, he prepared the letter and notice of cancellation therein mentioned, and enclosing both in an envelope addressed to plaintiff, placed it upon a desk in his office to be mailed. The only evidence, however, of the actual date of

mailing is the post office registry receipt, dated January 17th, 1922. No trace of the letter is shown between the alleged date of its preparation and the time, two days later, when it was sent by registered mail. So it does not appear that the alleged notice was in fact mailed with the letter. The plaintiff states he received the letter about 10:30 a. m. January 18th, and in this he is corroborated by the postmistress at Kermit, who delivered it to him. He also says that the letter did not contain the notice or any other enclosure; that he immediately went to Kermit State Bank where he kept his fire insurance policy and there directed W. M. Hale, cashier of the bank, to write the following reply, endorsed on the letter he had just received:

> "Reply:
> "I enclose policy, as requested. I have dwelling completed now. I want ins. on dwelling & store. Send agent to see promptly.
> "Kermit, W. Va. 1/17-22.
> > "A. J. Huff."

Plaintiff returned by mail on that day the letter (with the reply thereon), enclosing the policy to Scaggs Brothers' Insurance Agency.

W. M. Hale, cashier of Kermit State Bank, to whom the letter was presented for reply, says he did not see the alleged enclosure, a copy of which is as follows:

"COPY

SCAGGS BROTHERS INSURANCE COMPANY
Wayne, W. Va.
CANCELLATION NOTICE

"Wayne, W. Va., Jan. 15, 1922.
"A. J. Huff,
       Kermit, W. Va.
"The Columbia Insurance Co. hereby gives five days' formal notice of its intention to cancel policy No. 585394 issued to you as owner and for $4000.00 on stock of merchandise at Kermit, W. Va., in accordance with the stipulations and provisions embraced in Lines Nos. 51 to 55, both inclusive, of the printed conditions of said policy, to-wit:

" 'This policy shall be cancelled at any time at the request of the insured, or by the company, by giving (5) five days' notice of such cancellation. If this policy shall be cancelled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy, or last renewal, this company retaining the customary short *tate*, except that when this policy is cancelled by this company, by giving notice, it shall retain only the pro rata premium.'

"Please take special notice that all liability of said company under said policy will absolutely cease at noon Jan. 20, 1922, unless surrender thereof to said company be sooner made, and the pro rata unearned premium thereon will ·be paid upon proper demand and surrender of policy. You are requested to return said policy to this office accordingly, when the unearned premium will be returned to you as provided in said policy.

"Yours very truly,
SCAGGS BROS. INS. AGENCY,
(Signed)   By F. F. SCAGGS,
Agents for above company."

The fire occurred January 23d, 1922, within less than five days after receipt by plaintiff of the letter purporting to enclose the alleged notice of cancellation, causing loss of over $7,000.00.

After the loss plaintiff received by mail the following letter from S. H. Young, who issued the policy as agent for defendant, having authority in its behalf to accept risks, issue and deliver policies, collect premiums, make cancellations, etc.:

"COLUMBIA INSURANCE COMPANY
New Jersey
Head Office—Fire Department
100 William Street
New York

"Samuel H. Young, Agent
703 Ninth Street
Huntington, W. Va.

"Huntington, West Va., Jan. 27, 1922.
"Mr. A. J. Huff,
Kermit, West Va.
"Dear Sir:
"You will find enclosed herewith our check drawn

for the amount of $138.50, the amount of the unearned premium on policy No. 585394 issued by the above company on November 15th, 1921, and cancelled by our regular cancellation letter of January 15th, and as of that date.

"We were indeed sorry to have our company see fit to ask for cancellation of this business, but on account of the tremendous losses on outside business during the past several months, they have decided to retire from that class of business for the time being.

"We trust, however, that conditions generally will improve to such an extent as to allow our companies to again resume their regular business in the outside territories and thanking you for your business and hoping that we may be able again to be of some service to you, I am,

"Yours very truly,
THE YOUNG AGENCY,
By S. H. Young, Manager."

On February 20th, 1922, plaintiff, through his counsel B. R. Bias, addressed the defendant by letter at its home office in New York, insisting on recognition of his claim of loss, and specifically stating: "We now make formal demand on you for such payment, and request that you promptly advise us whether or not you deny or admit liability. If you do not deny liability, we, of course, understand that the assured shall comply with the conditions of the policy as to proof of loss, *and proof of loss will, in due course, be furnished in that case.*"

To this letter the defendant, on February 28th, replied: "We have your letter of February 20th, which we have read with much interest. We also have in this office policy which you refer to, said policy being marked cancelled. We are requesting our agents to furnish us with a statement giving the history of the transaction as they know it; and on receipt of this statement will write you further."

On March 16th, 1922, the defendant further answered: "We have your letter of March 14th and beg to advise that on February 28th we answered your communication as per carbon copy which we now enclose and regret that our communication miscarried. We have since received information from our agents which leads us to believe that the policy was prop-

erly cancelled, but the agents are still to furnish us with a certified copy of communication which was addressed to Mr. Huff, and until this copy is at hand we will not be justified in giving you any definite statement in the premises."

On April 4th, 1922, after the sixty days, within which to file proofs of loss, had run the defendant definitely denied liability by letter to plaintiff's counsel, in the following language:

"After making a careful investigation of all the facts and circumstances connected with the return of the above numbered policy, which we now hold in this office, we are of the opinion that a valid cancellation had been effected prior to the occurrence of the fire on January 23d."

The defendant asserts the following for causes of reversal:

(1)   That the policy was cancelled by agreement before the termination of the five-days period.

(2)   That the plaintiff cannot recover for failure to furnish proofs of loss.

(3)   That the trial court improperly admitted in evidence the letter of February 20th, 1922, from plaintiff's counsel to defendant.

(4)   That the trial court also erred in admitting instructions in behalf of plaintiff and refusing those offered for defendant.

We will consider these assignments in order:

First:   The defendant flatly contends that the surrender of the policy by plaintiff, regardless of his intention, effected its immediate cancellation. In support of this proposition the following cases are cited and relied on as involving facts similar to the facts in this case:

*Miller* v. *Fire Insurance Company,* 54 W. Va. 344: The agent of the insurance company, under specific instructions from his principal, approached the insured and requested the surrender of the policy for immediate cancellation, stating that he would secure for the assured a similar policy in another company he represented; and the agent for this purpose retained the unearned premium to apply on the new insurance. The policy was thereupon surrendered. At the time of the fire, occurring nine months later, the insured

thought he had the new policy, which in fact had never been issued.

*Kelly* v. *Aetna Insurance Co.,* 75 W. Va. 637: In response to a letter from the insurance agent, requesting the return of the policy for cancellation, under instructions of the company, the assured in person delivered the policy to the agent, receiving the unearned premium; and on the following day applied to another agency for a similar policy.

*Buckley* v. *Citizens Insurance Co.,* 188 N. Y. 399, 404: The insured voluntarily and unconditionally surrendered the policy immediately on receiving notice of cancellation.

*Gorge Hotel Company* v. *Liverpool & London & Globe Insurance Company,* 106 N. Y. Supp., 732: The insured was notified by the insurer that by reason of mortgage foreclosure proceeding on the property the policy had become cancelled and that the insurer's liability would cease at a certain time thereafter unless the policy were sooner surrendered, stating that on the return of the policy unearned premium would be returned. The policy, thereafter, was surrendered unconditionally.

*Hillock, Trustee,* v. *Traders Insurance Co.,* 54 Mich. 531: The policy was surrendered unconditionally to the insurance agent for cancellation without return of the unearned premium, the agent at the time stating: ''I will see if I can put it (the risk) in some other company for you.''

(The facts in each of the foregoing cases were held to constitute cancellation as matter of law.)

*Hi-Grade Oil & Gas Company* v. *United States Fidelity & Guaranty Company,* 93 W. Va. 448, 117 S. E. 157: When called upon by the agent of the insurer to surrender the policy for cancellation, the assured immediately returned the policy and accepted the unearned premium. It was declared that this effected immediate cancellation by agreement, which could not be later avoided by the assured upon the claim that he was not familiar with the clause in the policy entitling him to five days' notice of the insurer's election to cancel.

*Hancock* v. *Hartford Fire Insurance Co.,* 142 N. Y. Supp. 352: The issue in this case as to whether the insured had surrendered the policy to be cancelled or for the purpose of ad-

justing a previous loss thereunder, was considered to be a question of fact.

*Westchester Fire Insurance Co. v. McMunn*, 186 S. W. (Texas) 25: The agent of the insurer marked the policy cancelled when presented by the insured upon the agent's request for this purpose. Cancellation in that case was likewise declared dependent upon a question of fact.

*Berton* v. *Atlas Insurance Co.*, 89 N. E. (Mass.) 244: The insured was notified that unless he paid the premium or returned the policy, cancellation notice would be served on him. He returned the policy. A finding that the facts constituted an agreed cancellation was upheld.

*Coles* v. *Jefferson Insurance Company*, 41 W. Va. 261: The main question in this case was whether the facts known to the local agent of the insurance company, who solicited the policy, misstated in the application, avoided the risk; the court holding that knowledge to the agent was knowledge to his principal, the insurance company, and that its acceptance of the application with such knowledge constituted waiver of the covenant in the policy requiring the application to correctly state the material facts.

*Hollywood* v. *Dubuque Company*, 80 W. Va. 604: The question there was whether the insurance agents upon whom the insured had conferred full authority to keep his mill property insured could accept cancellation of one policy on the property, having obtained other insurance in like amount effective immediately upon cancellation of the first. The exercise of such authority by the agents, which did not affect the amount or continuity of the risk, was held proper.

Are the facts in any of the foregoing cases analogous to those before us? In each of those cases, involving agreed cancellation, unconditional demand or request for cancellation was made by the insurer or its agent directly to the assured or his agent. Here the transaction relied on as constituting cancellation by agreement was between the assured and a third party serving merely in the capacity of communicating notice of the insurer's desire to cancel; and who obtained possession of the policy under representation that the assured could *"keep protected"* by promptly delivering the same for replacement by other policies.

The letter requesting return of the policy indicated that its cancellation was within the plan of fully protecting the merchandise and buildings of the plaintiff. It states: "In accordance with our visit (concerning the building insurance for which plaintiff had applied), we have taken up with the companies the matter of insurance, and instead of writing three different policies, *the companies prefer cancelling the one you have on the stock of goods, and issuing new policies altogether on your stock, your new dwelling and office building in the rear, and the amount you asked for on old part of dwelling and household goods.* Upon this *advice,* we herewith enclose cancellation notice of the $4,000.00 on stock written in No. 585394 Columbia Insurance Company."

Then upon the *advice* of the companies that they preferred the policies to cover the merchandise and buildings together, and not each item of property separately, the return of the policy in question was requested in order to meet the desire of the companies as to the plan of insurance. This, of course, was a matter of indifference with the plaintiff to which he readily acceded. What he needed and wanted was insurance to "keep (him) protected." It was immaterial whether his property was insured by separate items or all together.

Scaggs Brothers Insurance Agency possessed no authority as agent or representative of the defendant company to agree with plaintiff for a cancellation of the policy. It is proven and admitted that this agency was never an agent of the defendant; and that its services in connection with the policy were merely those of broker, for which it received from the agent Young certain commissions. Want of such authority is recognized in the letter from the agency to Young, January 19th, 1921, stating, "We enclose the A. J. Huff policy *for* cancellation"—not *"the* A. J. Huff policy *which has been cancelled."*

There is no implied authority on the part of a soliciting agent or the broker who procured the insurance to bind the insurer by accepting a surrender of the policy; and a notice of, or request for, cancellation to such agent does not terminate the liability of the insurer. 26 C. J. 146; Joyce on Insurance (Sec. Ed.) Sec. 636.

The burden is upon the defendant to prove cancellation. 16 C. J. 148.

As stated in the case of *Hillock* v. *Insurance Company,* cited by defendant, *transactions involving alleged cancellation are to be construed reasonably and fairly and in accord with the evident understanding of the parties at the time.* There can be no question that, by a fair and reasonable interpretation of the letter from the agency to plaintiff, advising the election of the defendant to cancel the policy and plaintiff's reply, he was induced to surrender the policy with the understanding that it would be replaced by other insurance taking effect immediately, so as "to *keep* (him) protected"; and that additional insurance covering the buildings would also be issued.

This being the case, Scaggs Brothers Insurance Agency could not effect a legal cancellation by delivering the policy to Young in violation of such trust, within the five day period.

The defendant, as a second ground of defense, relies on failure of the plaintiff to file proof of loss as required by the policy. Plaintiff replies that the defendant has waived proof of loss by denying liability within the time it is required to be furnished. In this connection the plaintiff directs attention, first, to the letter of the agent S. H. Young to plaintiff after the loss, returning the unearned premium and stating the policy had been cancelled on a date prior to the fire; and cites the case of *Lusk* v. *American Insurance Co.,* 80 W. Va. 39, 91 S. E. 1078, which holds that proof of loss may be waived by a local agent of an insurance company empowered to issue policies, collect premiums and make renewals and cancellations. The plaintiff also relies upon the letters, herein set out, from the defendant which, it is contended, reasonably influenced the plaintiff in the belief that proof of loss would not be required. The defendant seeks to avoid the effect of these letters, mainly on the ground that they are signed "Prentice B. Reed, General Adjuster," and that the company was not bound thereby without proof that the General Adjuster had authority to deny liability. In answer to this proposition it is sufficient to say that the letters in question were written from the general office of the defendant in reply to plaintiff's letter offering to file proof of loss, if liability was

not denied on the ground of cancellation. The cases of *Slater* v. *Williamsburg City Fire Insurance Co.*, 68 W. Va. 779, and *Morris* v. *Duchess Insurance Co.*, 67 W. Va. 368, are cited as supporting defendant's contention. Those cases involve alleged waivers of proofs of loss by local or field adjusters, who did not undertake to represent the company in a general capacity.

In the *Morris* case the opinion states, "It is not claimed by plaintiff that any such denial (of liability) is contained in any *letter* or notice in writing *received from defendant company*. The evidence relied on is that on the day following the fire plaintiff's husband, for her, verbally notified a local agent of defendant of the loss; that this agent notified the general agents at Charleston of the loss by letter, acknowledged by them, and that a few days afterwards they sent their adjuster, a special agent, to the place of fire who, after viewing the premises, did not see or communicate with the insured or her husband, but stated to the local agent on his return from the place of the fire that he had learned the property was vacant and that defendant would deny liability under the policy for that reason."

In the *Slater* case it is said, "There is no evidence or claim of waiver (of proof of loss) by any other representative of the company, nor by the company otherwise than by the acts and conduct of the adjuster. * * * Adjustment does not include liability and payment. These questions need not be committed to *agents in the field*."

As the letters represent the acts of the company, the rule of law that a field adjuster has no implied authority to waive proofs of loss has no application.

We think Young's conduct after loss, returning the unearned premium and declaring the policy to have been cancelled at a time antedating the fire, constituted denial of liability on that ground, resulting in waiver of proof by loss by plaintiff. *Pauley* v. *Insurance Company*, 79 W. Va. 187.

Complaint is also made by defendant that the letter of B. R. Bias, as attorney for plaintiff, to defendant, dated February 20th, 1922, was improperly admitted over defendant's objection. This letter not only demanded recognition of liability on the part of the defendant, but contained a legal argu-

ment, with citation of authority, in support of the demand. The defendant now objects seriously to the argument part of the letter as having been calculated to influence the jury. Whether the letter was objectionable or not on this score, the objection at the time of its admission in evidence was merely general.; and it being proper for some purpose the general objection was rightly overruled. *Billups* v. *Woolridge*, 80 W. Va. 13, 91 S. E. 1082; *State* v. *Calhoun*, 67 W. Va. 666, 69 S. E. 1098.

The defendant also questions four of the five instructions given for the plaintiff. Plaintiff's instruction No. 1-A states that the defendant could not cancel the policy except by consent or agreement of the plaintiff, without first having given to the plaintiff five days' notice of its intention to do so. The defendant, without assigning reason, says that this instruction is misleading.

Plaintiff's instruction No. 1-B told the jury that under the law of this State no insurance company can cancel a policy issued against loss by fire on property in the State, without giving the party insured at least five days' written notice of such intention, and returning the ratable portion of the premium for the unexpired term of the policy. This instruction was in the language of Section 67 of Chapter 34, Code. It is said that the instruction was improper for having omitted the theory of cancellation by agreement or consent. The preceding instruction, which should be read in connection with this one, supplies the alleged missing element.

Plaintiff's instructions Nos. 2 and 3 simply inform the jury as to the correct method of computing time under the five days' notice required of defendant upon its election to cancel. The criticism of these instructions, because of their failure to present the theory of cancellation by consent or agreement, is also unfounded.

The defendant offered five instructions, all of which were refused. The first was peremptory, and the remaining were intended as presenting rules of law for the jury's guidance in its finding of facts. These remaining instructions, as well as the first, were properly refused. They are predicated upon the case of *Miller* v. *Insurance Company*, cited, where the policy was delivered to the *agent* of the company for *immedi-*

*ate* cancellation. They therefore would have informed the jury that the mere delivery of the policy to Scaggs Brothers Insurance Agency, whom it is admitted and affirmatively proven was not an agent of defendant, effected cancellation, notwithstanding the agency's representation, in obtaining the policy that cancellation was desired for the purpose of substituting other policies in its stead. It would make no difference in this respect that plaintiff actually received the alleged formal notice of cancellation prepared by the agency, as it was acting under mere advice of the agent Young, who could not delegate authority to accept cancellation.

It is not denied that the fire occurred within five days (properly computed) from receipt by plaintiff of the agency's letter relative to cancellation. Joyce on Insurance (Sec. Ed.) sec. 1665-A.

We, therefore, affirm the judgment of the circuit court.

*Affirmed.*