Hillsborough,  
 Dec. 1, 1931.

THE FIDELITY-PHENIX FIRE INSURANCE CO. & a.

*v.*

MARY A. BRENNAN & a.

*Thorp & Branch* (*Mr. Branch* orally), for the plaintiffs.

*Warren, Howe & Wilson,* for the defendants.

MARBLE, J. The plaintiffs contend that inasmuch as the policies are void as to the owners of the damaged property, the amount of the loss should not be applied either to reduce the mortgage indebtedness or to repair the property, that their position is in reality that of sureties, and that before payment of the loss be required of them, the defendant bank should first exhaust its remaining security under the mortgage.

Each policy conforms to the standard requirements of this state and contains the following provision, frequently called the union mortgage clause: "If this policy shall be made payable to a mortgagee of the insured real estate, no act or default of any person other than such mortgagee or his agents, or those claiming under him, shall affect such mortgagee's right to recover in case of loss on such real estate; provided . . . whenever this company shall be liable to a mortgagee for any sum for loss under this policy, for which no liability exists as to the mortgagor or owner, and this company shall elect by itself, or with others, to pay the mortgagee the full amount secured by such mortgage, then the mortgagee shall assign and transfer to the companies interested, upon such payment, the said mortgage, together with the note and debt thereby secured."

The plaintiffs emphasize the fact that the peril insured against was merely that of loss by fire. They assert that the buildings have been left open to the weather and allowed to depreciate, and further that it is a matter of common knowledge that real estate values have declined substantially since 1927, when the fire occurred.

They argue that if they are required to make immediate payment of the adjusted loss they become in effect insurers against depreciation in value arising both from the debtors' failure to keep the property in repair and from changed economic conditions, and that whether the money paid by them to the defendant bank be applied in reduction of the mortgage debt or in repair of the damaged property benefit will inure to the owners, who by their conduct have forfeited all rights under the policies.

Since the primary object of the union mortgage clause is to protect

the mortgagee, that protection is not to be curtailed merely because incidental advantage may result to the mortgagor. Especially is this true when it is within the power of the insurer to obviate this contingency by taking an assignment of the mortgage.

"In 1885 it was enacted that the insurance commissioner should provide a standard form of policy, and that all companies should conform to the regulations prescribed by him. Laws 1885, c. 93, s. 3. Acting under this authority, the commissioner prescribed the form since known as the 'New Hampshire standard form of policy.' Ins. Com. Rep., 1885, pp. 5, 73. Grave doubts arose as to the binding effect of the commissioner's action. A similar statute, passed by the same legislature, was held to be invalid as an attempted delegation of legislative power. *In re School Law Manual*, 63 N. H. 574. In the revision of 1891, all doubts were removed by the enactment that 'the form of policy and insurance contract now in force in this state is continued until the insurance commissioner shall change it.' P. S., c. 170, s. 1." *Franklin* v. *Insurance Co.*, 70 N. H. 251, 258. See also *Salganik* v. *Insurance Co.*, 80 N. H. 450, 453, 454. Section 1 of chapter 170 of the Public Statutes is now embodied in P. L., c. 276, ss. 1, 2. The insurance commissioner has made no change in the form of policy, and the provisions of the New Hampshire standard form have therefore all the force of legislative enactments.

This court has repeatedly declared that one of the purposes of insurance legislation in this state is "to provide for the speedy adjustment and payment of losses." *Franklin* v. *Insurance Co.*, supra; *Spalding* v. *Insurance Co.*, 71 N. H. 441, 444; *Davidson* v. *Insurance Co.*, 80 N. H. 552, 556. And there is nothing in the standard form of policy or in chapter 276 of the Public Laws to indicate that a less speedy payment is contemplated where the rights of a mortgagee, as distinct from those of a property owner, are involved.

By the weight of authority a surety cannot, "in the absence of agreement or special equitable circumstances," compel "the creditor to exhaust the securities of the principal before calling upon the surety to pay." Spencer, Suretyship, s. 179.

"When the object of a surety's appeal to equity is to compel the creditor to exhaust the collaterals in his hands before proceeding against the surety, the foundation of equitable relief is the inability of the surety himself to enforce such collateral after paying the debt, or the possibility that the creditor by some act has impaired its value or destroyed its legality. The mere fact that the creditor holds security for the debt does not entitle the surety to appeal to equity for

a decree that the creditor look first to such security for his pay, as in such a case the surety can protect himself by paying the claim, and by being subrogated to the creditor's rights to the security." 21 R. C. L. 1127, 1128, and cases cited.

"Some cases have been cited . . . the authority of which we do not dispute, that under certain circumstances a court of equity, at the instance of a surety, will coerce a creditor to proceed with the collection of his claim against the principal debtor. But these are cases where, by the delays and forbearance of the creditor, the surety is liable to sustain loss, or where the creditor has access to a fund for the payment of his debt which the sureties cannot make available. The principle has never been extended to a case like the one at bar, where the creditor has merely exercised his right of election as between two remedies for the collection of a debt, and where the securities held by the creditor may be made immediately available to the surety by his paying the debt and seeking subrogation." *Davis* v. *Patrick*, 57 Fed. Rep. 909, 912, 913.

"As between the creditor to whom a debt is owing and the surety who owes it, equity very properly declares that the creditor ought not to be compelled to enforce, for the benefit of the surety, the security he holds, but that the surety himself should pay the debt, and enforce such security for his own benefit." *Bingham* v. *Mears*, 4 N. D. 437, 445. See also *Morrison* v. *Bank*, 65 N. H. 253, 280.

But it does not follow from the fact that the plaintiffs possess a privilege commonly enjoyed by sureties that their undertaking is one of suretyship in the strict sense of the term. "The case does not involve the rights of sureties at common law, but the question is what was the agreement of the parties." *Guaranty Trust Co.* v. *Company*, 79 N. H. 480, 481.

The intent of the union mortgage clause is "to make the policy operate as an insurance of the mortgagors and the mortgagees separately, and to give the mortgagees the same benefit as if they had taken out a separate policy, free from the conditions imposed upon the owners, making the mortgagees responsible only for their own acts." *Hastings* v. *Insurance Co.*, 73 N. Y. 141, 154. This construction is very generally given to policies containing the clause in question. 26 C. J. 85, and cases cited.

In *Badger* v. *Platts*, 68 N. H. 222, 225, the following language is quoted with approval: "The contract is, that after a forfeiture the insurance shall be exclusively for the benefit of the mortgagee; that the mortgagor and those claiming under him shall have no beneficial

interest in the policy, and that payment to the mortgagee shall not discharge the mortgage, but subrogate the defendant [insurance company] to the mortgagee's right in it. It was a contract which the parties were competent to make, and we know no reason why they should not abide by it." *Allen* v. *Insurance Co.*, 132 Mass. 480, 483.

"The theory of the appellants is that, because their respective policies contained in the mortgage clause a provision to the effect that, whenever either company paid to the mortgagee any sum for a loss under its policy and claimed that it was under no liability to the mortgagors, it should at once be subrogated to the rights of the mortgagee under any securities held by it 'on the property in question' for the payment of the mortgage debt, this provision in effect made them sureties for the payment of the mortgage debt and armed them with all the rights of sureties . . . We are of opinion that this is an erroneous view. The provision . . . did not make the appellants sureties for the payment of the mortgage indebtedness, and did not purport to place them in that relation. . . . If the appellants desired to avail themselves of the right of subrogation which was reserved to them by the mortgage clause, and to acquire an interest in the mortgage, so as to be able to dictate or control settlements with other insurers, they should first have paid their respective losses." *New Hampshire Fire Ins. Co.* v. *Insurance Co.*, 112 Fed. Rep. 199, 203. See also 5 Joyce, Insurance (2d *ed.*), 5907.

We therefore conclude that, although the plaintiffs' position may be analogous in some respects to that of a surety, their rights and duties are defined by the terms of the insurance contract, which accord them no control over the security held by the defendant bank until they have paid to the bank the amount of the mortgage debt. See 26 C. J. 462 and cases cited.

The plaintiffs further suggest that in case they are ordered to make immediate payment of the adjusted loss, the decree should provide that the bank "either hold said mortgage claim for the collection of the sum thus paid for the benefit of the insurers, or transfer the mortgage without recourse to such person as the said insurers may designate, to hold said mortgage as trustee for them, when said bank shall have received the full amount due it under said mortgage."

Such a decree would interfere with the bank's freedom of action, making it a collecting agent for the plaintiffs, or at least precluding it from dealing with the mortgage in the customary way. It is true that a similar order was approved in *Markarian* v. *Morazines*, 83 N. H. 479, but there the trust company consented to a decree for an

assignment and merely desired to be protected by a court order. The question whether the order could be made without the trust company's consent is not decided or even considered. It is stated in the opinion (*p.* 480) that the mortgage creditor "affirmed its willingness to assign the note and mortgage to the plaintiff if the court should find that justice so required."

The plaintiff in that case was a surety and entitled to subrogation to the extent of the payment made, subject to the condition that the whole claim of the creditor should be satisfied, while here the plaintiffs are not sureties and, by the express provisions of the union mortgage clause, are entitled to subrogation only in case they "shall elect ... to pay the mortgagee the full amount secured" by the mortgage. The same distinction exists between the Massachusetts and New Hampshire policies referred to in *Badger* v. *Platts*, 68 N. H. 222. The Massachusetts contract allows the insurance company subrogation *pro tanto*. The failure of the New Hampshire standard form to confer any such right is significant. Finally, since the remedy provided by the insurance contract in the present case is adequate for the plaintiffs' protection, there is no occasion for equity to furnish another remedy at the expense of the bank.

A copy of the plaintiffs' bill in equity is not included in the reserved case, and there is no agreement for a decree. But since the questions of law arising under the agreed facts are transferred for advice and information, the claims of the parties as therein set forth have been considered. See *Boston & Maine R. R.* v. *State*, 76 N. H. 515, 517. No argument has been made in behalf of the defendants, but it does not appear that the mortgagors are asserting any claim under the policies, or that the mortgagee denies the right of the plaintiffs to take over the mortgage for the protection of their rights against the mortgagors. It follows that a decree dismissing the bill should be entered.

*Case discharged.*

PEASLEE, C. J., and BRANCH, J., did not sit: the others concurred.