408 S.E.2d 777

**FIRSTBANK SHINNSTON, a West Virginia Banking Corporation, Plaintiff Below, Appellee,**

v.

**WEST VIRGINIA INSURANCE COMPANY, a Corporation; and Frank W. Maley, Jr., Defendants Below, Appellants.**

No. 19760.

Supreme Court of Appeals of West Virginia.

Submitted May 14, 1991.

Decided July 25, 1991.

---

David A. Sims, Michele W. Wallace, Ross and Harris, Elkins, for appellants.

David J. Romano, Clarksburg, for appellee.

Catherine D. Munster, John E. Basilone, Clarksburg, for amicus curiae, West Virginia Ass'n of Mut. Ins. Companies.

McHUGH, Justice:

The appellant, West Virginia Insurance Company, seeks to have this Court reverse the order of the Circuit Court of Harrison County granting summary judgment in favor of the appellee, Firstbank Shinnston, and set aside the judgment entered against it in the amount of $36,740.75. Upon review of the record before us, we conclude that the order of the circuit court should be affirmed.

I

In May of 1985, Frank W. Maley, Jr., executed a simple interest note wherein he agreed to repay a loan to Firstbank in the amount of $20,000.00 plus interest. The loan was secured by a deed of trust dated May 7, 1985, wherein Mr. Maley conveyed certain real estate to trustees to secure payment of the $20,000.00 loan to Firstbank. Mr. Maley also agreed in the deed of trust to keep the premises insured against loss by fire. He subsequently obtained an insurance policy from West Virginia Insurance in the amount of $25,000.00.[1] Firstbank was listed on the policy as mortgagee.[2]

---

1. The building was insured for $20,000.00 and its contents were insured for $5,000.00.

2. The deed of trust provided that Mr. Maley was to "keep the improvements now existing or hereafter erected on the [p]roperty insured against loss by fire hazards included within the term 'extended coverage[.]' "

Although Mr. Maley paid the first full year's premium at the time he purchased the policy, he failed to pay an additional $30.00 premium for what is termed "extended coverage." On November 14, 1985, West Virginia Insurance mailed a notice of cancellation to Mr. Maley advising him that he had not paid the $30.00 premium for extended coverage, and that he would have ten days within which to make the payment. A copy of the notice sent to Mr. Maley was mailed to Firstbank since it was listed as mortgagee on the policy. However, the copy of the notice sent to Firstbank was returned to West Virginia Insurance with the handwritten notation "no record" on it.

Before the ten-day period specified in the notice of cancellation had expired, Mr. Maley paid the $30.00 premium for extended coverage. Another copy of the notice of cancellation previously sent to Mr. Maley was mailed to Firstbank, but this notice included a statement that Mr. Maley had paid the premium and that the policy was still in effect. It appears that this notice was also returned to West Virginia Insurance with the handwritten notation "no record." West Virginia Insurance then removed Firstbank from the insurance policy as mortgagee. There is nothing in the record which indicates that West Virginia Insurance ever notified Firstbank that its interest as the named mortgagee was being canceled.

The policy was subsequently renewed for another term of one year. However, in February, 1987, there was a fire at Mr. Maley's premises. Thereafter, Mr. Maley filed a notarized proof of loss in which he indicated that there was no other secured interest in the property.[3] On the basis of an estimate prepared by Heflin Contracting and an itemization prepared by an adjuster for West Virginia Insurance, Mr. Maley was paid a total of $18,000.00 by West Virginia Insurance.[4]

Mr. Maley failed to repair the property and, as a result, West Virginia Insurance canceled his policy on May 25, 1987. Mr. Maley also defaulted on his deed of trust with Firstbank. Subsequently, Firstbank made demands upon Mr. Maley and West Virginia Insurance to pay it all sums due in accordance with the deed of trust and the insurance policy. Upon refusal to pay, Firstbank filed a complaint against them. In its answer to the complaint, West Virginia Insurance filed a cross-claim against Mr. Maley. West Virginia Insurance was subsequently unable to locate Mr. Maley and filed for a default judgment against him.

Both parties moved for summary judgment prior to trial, and the circuit court granted summary judgment on the issue of liability in favor of Firstbank. The circuit court also scheduled a hearing on Firstbank's claim for attorney's fees and costs. Following the hearing, the circuit court entered a final order awarding Firstbank $20,000.00 for damage to the structure, $11,073.75 in attorney's fees and costs, and prejudgment interest in the amount of $5,667.00, for a total judgment in the sum of $36,740.75. It is from this order that West Virginia Insurance now appeals.

II

West Virginia Insurance first contends that summary judgment was improperly granted in this case since a question of fact exists as to whether there was any fault of West Virginia Insurance or its agent in the removal of Firstbank as the mortgagee listed on the policy. Firstbank asserts that there were no material facts in dispute

---

3. The proof of loss was actually completed by Ted E. Richards, an agent adjuster, who then mailed it to Mr. Maley for his signature.

4. The $18,000.00 represented $13,000.00 for damage to the property and $5,000.00 for loss of personal property. However, the estimate from Heflin Contracting stated that the cost of repairing the building would be at least $15,242.27. It is unclear why West Virginia Insurance only paid Mr. Maley $13,000.00 for the damage to the building when it appears the damage exceeded that amount.

upon which West Virginia Insurance could have relied to support an effective cancellation of Firstbank's interest in the insurance policy.

■ Although Firstbank was listed on the policy as mortgagee, it is actually the lender for which the deed of trust was executed to secure payment of the $20,000.00 loan by the insured, Mr. Maley. However, a deed of trust is in effect a mortgage, the primary difference being the manner in which it is foreclosed. *Rock v. Mathews,* 35 W.Va. 531, 536, 14 S.E. 137, 139 (1891).[5]

In *Sandusky v. Faris,* 49 W.Va. 150, 174, 38 S.E. 563, 573 (1901) (quoting *Hoffman, Burneston & Co. v. Mackall,* 5 Ohio St. 124, 130–31 (1855)), we recognized the distinction between a mortgage and a deed of trust in the nature of a mortgage:

A mortgage is the conveyance of an estate, or pledge of property, as security for the payment of money, or the performance of some other act, and conditioned to become void upon such payment or performance. A deed of trust in the nature of a mortgage, is a conveyance in trust by way of security, subject to a condition of defeasance, or redeemable at any time before the sale of the property. A deed conveying land to a trustee as mere collateral security for the payment of a debt when due, and with power to the trustee to sell the land and pay the debt, in case of default on the part of the debtor, is a deed of trust in the nature of a mortgage.

The deed of trust in the case before us is a deed of trust in the nature of a mortgage.[6] However, because cases from other jurisdictions, discussions in texts and treatises, and, in fact, some of the documents in this case refer to mortgages, we shall apply the legal concepts relating to mortgages to deeds of trust for purposes of resolving this case.

On the first page of the policy issued to Mr. Maley by West Virginia Insurance was a clause providing that loss on building items was to be paid to Firstbank, listed as mortgagee, subject to the provisions of the mortgage clause. The mortgage clause in the insurance policy issued to Mr. Maley provides, in relevant part:

Loss or damage, if any, under this policy, shall be payable to the mortgagee (or trustee), named on the first page of this policy, as interest may appear under all present or future mortgages upon the property herein described in which the aforesaid may have an interest as mortgagee (or trustee) in order of precedence of said mortgages, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand pay the same.

We have recognized that a mortgage clause, such as the one included in Mr. Maley's policy, creates an independent contract between the insurance company and the mortgagee. *Fayetteville Building & Loan Association v. Mutual Fire Insurance Co.,* 105 W.Va. 147, 141 S.E. 634

---

**5.** No application to a court is needed to foreclose under a deed of trust. For this reason, deeds of trust are used more frequently than mortgages. *See Swann v. Young,* 36 W.Va. 57, 67, 14 S.E. 426, 430 (1892); 13A M.J. *Mortgages and Deeds of Trust* § 4 (Replacement Vol. 1991).

**6.** The release provision in the deed of trust provides that "[u]pon payment of all sums secured by this Deed of Trust, Lender or Trustee shall release this Deed of Trust without charge to Borrower."

(1928). In *Fayetteville Building & Loan Association*,[7] we explained that:

> the great weight of authority in this country supports the view that when there is attached to a policy of fire insurance the so-called 'standard' or 'union' mortgage clause providing that the insurance shall not be invalidated by any act or neglect of the mortgagor or owner of the insured property, an independent contract between the insurance company and the mortgagee is created, and no act or omission of the mortgagor, of which the mortgagee is ignorant, will invalidate the policy, whether it occurs before, at the time of, or subsequent to the issuance thereof.

105 W.Va. at 150, 141 S.E. at 635. *See also* syl. pt. 4, *Fuller v. Stonewall Casualty Co.*, 172 W.Va. 193, 304 S.E.2d 347 (1983); *Fire Association v. Ward*, 130 W.Va. 200, 205–06, 42 S.E.2d 713, 716 (1947). Furthermore, we observed in *Fire Association v. Ward*, that a "mortgagee bank ha[s] an interest by virtue of its mortgage and note to the extent of the balance due it from the mortgagor[.]" 130 W.Va. at 205, 42 S.E.2d at 716.

In essence, there are two separate and distinct contracts of insurance created under the standard mortgage clause, one with the owner of the property and one with the mortgagee. *Westchester Fire Insurance Co. v. Coverdale*, 48 Kan. 446, 451–52, 29 P. 682, 684 (1892); *Better Valu Homes, Inc. v. Preferred Mutual Insurance Co.*, 60 Mich.App. 315, 319, 230 N.W.2d 412, 413 (1975); *Hennessey v. Helgason*, 168 Miss. 834, 839, 151 So. 724, 725 (1934); *Malvaney v. Yager*, 101 Mont. 331, 339, 54 P.2d 135, 139 (1936) (under union mortgage clause, policy becomes a double policy insuring both interests); *Guarantee Trust & Safe Deposit Co. v. Home Mutual Fire Insurance Co.*, 180 Pa.Super. 1, 5, 117 A.2d 824, 826 (1955); 10A G. Couch, *Couch['s] Cyclopedia of Insurance Law* § 42:728 (2d ed. rev.1982). The standard mortgage clause gives the mortgagee the same protection as if it had taken out a separate policy. *Fayetteville Building & Loan Association v. Mutual Fire Insurance Co.*, 105 W.Va. at 151, 141 S.E. at 636 (citing *Hastings v. Westchester Fire Insurance Co.*, 73 N.Y. 141, 154 (1878)). *See also Fireman's Fund Insurance Co. v. Rogers*, 18 Ark.App. 142, 145, 712 S.W.2d 311, 314 (1986); *Bankers Joint Stock Land Bank v. St. Paul Fire & Marine Insurance Co.*, 158 Minn. 363, 366, 197 N.W. 749, 750 (1924); *Fidelity–Phenix Fire Insurance Co. v. Brennan*, 85 N.H. 291, 294, 158 A. 124, 126 (1931); *Syracuse Savings Bank v. Yorkshire Insurance Co.*, 301 N.Y. 403, 407, 94 N.E.2d 73, 75 (1950); *Guarantee Trust & Safe Deposit Co. v. Home Mutual Fire Insurance Co.*, 180 Pa.Super. 1, 5, 117 A.2d 824, 826 (1955); 10A G. Couch, *Couch['s] Cyclopedia of Insurance* § 42:728 (2d ed. rev.1982). In early decisions, some jurisdictions found that the mortgagee became an insured under the standard mortgage clause. *See Collinsville Savings Society v. Boston Insurance Co.*, 77 Conn. 676, 681, 60 A. 647, 648 (1905); *Ormsby v. Phenix Insurance Co.*, 5 S.D. 72, 78, 58 N.W. 301, 303 (1894). *See also May v. Market Insurance Co.*, 387 So.2d 1081, 1084–85 (La.1980) (citing *Collinsville Savings Society v. Boston Insurance Co.*, court held mortgagee deemed "insured" under statute allowing recovery of attorney's fees).

■ Thus, in the present case, we hold that if a fire insurance contract between an insurer and a property owner includes a standard mortgage clause naming as mortgagee the lender under a deed of trust executed by the property owner to secure a debt owing on the property, the lender under the deed of trust pursuant to that clause has an independent and distinct contract with the insurer, as if the lender under the deed of trust had taken out a separate policy with the insurer, and is

---

**7.** In *Fayetteville Building & Loan Association,* the mortgagor obtained the insurance policy by misleading the insurance company as to the location of the property with reference to protection against fires. There was no evidence that the mortgagee had knowledge of the mortgagor's misrepresentation. The court held that the mortgagor's action in misleading the insurance company did not preclude the mortgagee from recovering under the union mortgage clause.

deemed to be an insured to the extent of the balance due it from the property owner.

In the case before us, however, West Virginia Insurance canceled Firstbank as the mortgagee on the policy shortly after its issuance. The cancellation provision under the mortgage clause of Mr. Maley's policy provided that West Virginia Insurance "reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for 10 days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and this Company shall have the right, on like notice, to cancel this agreement." Although at one point West Virginia Insurance gave notice to Firstbank that Mr. Maley's interest may be canceled, there is nothing in the record which indicates that West Virginia Insurance ever notified Firstbank that its interest as mortgagee was being canceled.

The notice requirements for cancellation of a policy by an insurance company are set forth now in *W.Va.Code*, 33–17A–4(b) [1990], which provides that:

A notice of cancellation of property insurance coverage by an insurer shall be in writing, shall be delivered to the named insured or sent by first class mail to the named insured at the last known address of the named insured, shall state the effective date of the cancellation and shall be accompanied by a written explanation of the specific reason or reasons for the cancellation.

This Court has not only addressed what constitutes adequate transmittal of a notice of cancellation, *Smith v. Municipal Mutual Insurance Co.*, 169 W.Va. 296, 289 S.E.2d 669 (1982); *National Grange Mutual Insurance Co. v. Wyoming County Insurance Agency, Inc.*, 156 W.Va. 521, 195 S.E.2d 151 (1973), but we have also discussed the form that such notice must take. *Staley v. Municipal Mutual Insurance Co.*, 168 W.Va. 84, 282 S.E.2d 56 (1981). We explained in the syllabus of *Staley:*

A notice of cancellation of insurance must be clear, definite and certain. While it is not necessary that the notice be in any particular form, it must contain such a clear expression of intent to cancel the policy that the intent to cancel would be apparent to the ordinary person. All ambiguities in the notice will be resolved in favor of the insured.

■ Since Firstbank had a separate and distinct contract with West Virginia Insurance under the mortgage clause of the fire insurance policy and was deemed an insured by virtue of its deed of trust to the extent of the balance due it from the owner of the property, Firstbank was entitled to the standard of notice stated by this Court in *Staley.* However, West Virginia Insurance failed to give Firstbank any form of notice that it was removing Firstbank as mortgagee from the insurance policy.[8]

■ Our traditional rule with respect to motions for summary judgment was stated by this Court in syllabus point 3 of *Aetna Casualty & Surety Co. v. Federal Insurance Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963): "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *See also Smith v. Buege*, 182 W.Va. 204, 208, 387 S.E.2d 109, 113–14 (1989); *Crain v. Lightner*, 178 W.Va. 765, 768–769, 364 S.E.2d 778, 781–82 (1987).

Clearly, in the case before us, there were no material facts in dispute upon which West Virginia Insurance could have relied to support an effective cancellation of

---

**8.** The burden of proving cancellation was on West Virginia Insurance. *Huff v. Columbia Insurance Co.*, 94 W.Va. 663, 673, 119 S.E. 854, 857 (1923). As we pointed out in *Huff*, citing *Hillock v. Traders Insurance Co.*, 54 Mich. 531, 538, 20 N.W. 571, 574 (1884), "transactions involving alleged cancellation are to be construed reasonably and fairly and in accord with the evident understanding of the parties at the time." 94 W.Va. at 673, 119 S.E. at 857 (italics in original omitted).

Firstbank's interest as mortgagee. Thus, we affirm the trial court's order granting summary judgment in favor of Firstbank on the issue of liability.

### III

Next, West Virginia Insurance asserts that the payment of Mr. Maley's claim was a complete discharge of its duties under *W.Va.Code*, 33–17–12 [1965]. Firstbank maintains that since it was listed as the loss payee under the insurance contract with West Virginia Insurance, the payment of the insurance proceeds to Mr. Maley did not relieve West Virginia Insurance of their liability to Firstbank pursuant to *W.Va.Code*, 33–17–12 [1965].

*W.Va.Code*, 33–17–12 [1965] provides, in relevant part:

> Whenever the proceeds of or payment under a policy of fire insurance covering property located in West Virginia heretofore or hereafter issued becomes payable, and the insurer makes payment thereof *to the person or persons designated in the policy* or contract or if the proceeds have been assigned and written notice of such assignment given to the insurer, to the person or persons being entitled thereto by virtue of such assignment, such payment shall fully discharge the insurer from all claims under the policy or contract.

(emphasis added).

The mortgage clause in the present case specifically provides that "[l]oss or damage, if any, under this policy, shall be payable to the mortgagee (or trustee), named on the first page of this policy, ... upon the property herein described in which the aforesaid may have an interest as mortgagee (or trustee)[.]" [9] Firstbank was listed as mortgagee on the first page of the policy when it was issued.

As we pointed out earlier, Firstbank had a separate contractual right with West Virginia Insurance, and was entitled to the insurance proceeds to the extent of the amount of the debt. By virtue of its deed of trust with the insured, Firstbank was listed on the first page of the policy as the mortgagee to which the proceeds from the policy were to be paid in the event of loss or damage. Moreover, West Virginia Insurance was required to pay the proceeds under the fire insurance policy to the person or persons designated in the policy. *See* syl. pt. 3, *Arcuri v. Great American Insurance Co.*, 176 W.Va. 211, 342 S.E.2d 177 (1986). Thus, payment of the proceeds from the fire insurance policy to Mr. Maley did not discharge West Virginia Insurance from its obligation to Firstbank. Accordingly, we find this assignment of error without merit.

### IV

West Virginia Insurance further contends that attorney's fees were improperly granted to Firstbank because such fees are only recoverable by the insured, under *Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W.Va. 323, 352 S.E.2d 73 (1986). Firstbank contends that it was entitled to recover its costs, expenses and reasonable attorney's fees since it substantially prevailed in its action against West Virginia Insurance.

A brief review of *Hayseeds* is necessary to clarify the liability of an insurer for reasonable attorney's fees upon an adverse adjudication. We acknowledged in *Hayseeds* that many jurisdictions have enacted statutes allowing prevailing claimants to recover reasonable attorney's fees when the insurer refuses to settle a claim without just cause. *Id.* 177 W.Va. at 329, 352 S.E.2d at 79. Moreover, we recognized that several courts have held that, in the absence of a statutory or contractual provision, reasonable attorney's fees may be recovered "when the insurer has acted in bad faith, wantonly, or for an oppressive

---

9. We note that this insurance policy was obtained by Mr. Maley pursuant to the terms of the deed of trust with Firstbank in which Mr. Maley agreed to maintain fire insurance for the property.

reason." *Id.* 177 W.Va. at 329, 352 S.E.2d at 79. We also observed that another purpose of awarding reasonable attorney's fees is to encourage the prompt payment of valid claims. *Id.* 177 W.Va. at 329, 352 S.E.2d at 79.

We have also identified other reasons for awarding reasonable attorney's fees. In *Jordan v. National Grange Mutual Insurance Co.*, 183 W.Va. 9, 11, 393 S.E.2d 647, 649 (1990) (quoting *Aetna Casualty & Surety Co. v. Pitrolo*, 176 W.Va. 190, 194, 342 S.E.2d 156, 160 (1986), and *Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W.Va. at 329, 352 S.E.2d at 79), we recognized "that where an insurer has violated its contractual obligations, the insured should be fully compensated for all expenses incurred as a result of the insurer's breach of contract; to hold otherwise would be unfair to the insured, who purchased the insurance policy to be protected from incurring attorney's fees and expenses arising from litigation." (footnote omitted) We further pointed out in *Jordan* that " '[t]o impose upon the insured the cost of compelling his [or her] insurer to honor its contractual obligation is effectively to deny him [or her] the benefit of his [or her] bargain.' " 183 W.Va. at 11, 393 S.E.2d at 649, (quoting *Hayseeds*, 177 W.Va. at 329, 352 S.E.2d at 80).

■ Finally, we held in syllabus point 1 of *Hayseeds*, supra:

> Whenever a policyholder substantially prevails in a property damage suit against its insurer, the insurer is liable for: (1) the insured's reasonable attorneys' fees in vindicating its claim; (2) the insured's damages for net economic loss caused by the delay in settlement[;] and [(3)] damages for aggravation and inconvenience.

■ We find that the reasoning stated in the foregoing cases is also applicable to the facts of the case before us. We have already established that the standard mortgage clause created an independent contract between West Virginia Insurance and

Firstbank, as if Firstbank had taken out a separate policy with West Virginia Insurance, and that Firstbank was deemed an insured to the extent of the balance due it from Mr. Maley. However, in order to recover the proceeds to which it was entitled under the policy, Firstbank had to file an action against West Virginia Insurance because West Virginia Insurance removed Firstbank from the insurance policy without notice to Firstbank and paid the proceeds of the policy to Mr. Maley. Firstbank, having the same status as an insured to the extent of the balance due it from Mr. Maley, should be compensated for the costs it incurred in compelling West Virginia Insurance to honor its contractual obligation. Therefore, under the principles stated in *Hayseeds*, Firstbank was entitled to recover its reasonable attorney's fees and costs.

■ West Virginia Insurance further asserts that if Firstbank is entitled to an award of attorney's fees, those fees should be limited to one-third of $20,000.00, the amount for which the building was insured.[10] West Virginia Insurance bases this assertion on our observation in *Hayseeds* that "reasonable attorney's fees in this type of case are one-third of the face amount of the policy, unless the policy is either extremely small or enormously large." *Id.* 177 W.Va. at 329–30, 352 S.E.2d at 80. However, West Virginia Insurance fails to consider our directive in *Hayseeds* that "when a claim is for under $20,000 or for over $1,000,000 . . . the court should then inquire concerning what 'reasonable attorneys' fees' are." *Id.* We have listed several factors to be considered by courts in determining the reasonableness of attorney's fees. In syllabus point 4 of *Aetna Casualty & Surety Co. v. Pitrolo*, 176 W.Va. 190, 342 S.E.2d 156 (1986):

> Where attorney's fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client.

**10.** The contents of the building were insured for an additional $5,000.00.

The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Firstbank submitted a detailed list of the time spent by Firstbank's attorneys in the preparation and prosecution of this case. The Court found that reasonable attorney's fees in the amount of $11,073.75 were warranted in this case because Firstbank had substantially prevailed. The circuit court also appeared to indicate that West Virginia Insurance had prolonged the litigation in this case.[11]

We have not been provided with a transcript of the hearing on reasonable attorney's fees and thus, we have no record to review except the parties' motions and the circuit court's order. On the basis of the limited record before us, we cannot conclude that the circuit court's ruling on this point should be reversed.[12]

## V

Finally, West Virginia Insurance contends that if Firstbank is entitled to prejudgment interest, the interest should only

be based on the $18,000.00 [13] that was paid by West Virginia Insurance to Mr. Maley for damage to the building caused by fire. West Virginia Insurance further asserts that the payment of that interest should only accrue from the time that Mr. Maley defaulted on his mortgage to Firstbank, which occurred after the property was damaged by fire and the proceeds from the policy had been paid. Firstbank contends that once the circuit court determined that it was entitled to the proceeds under the insurance policy, which was a sum certain, Firstbank became entitled to interest at the legal rate from the date that its contractual right to receive the proceeds from the policy arose.

The circuit court cited our holding in *Grove v. Myers*, 181 W.Va. 342, 382 S.E.2d 536 (1989), in support of its award of prejudgment interest. We observed in syllabus point 2 of *Grove*, that *W.Va.Code*, 56–6–31 [1981] contemplates that the calculation of prejudgment interest commences with the date on which the cause of action accrued. In the case now before us, Firstbank's cause of action accrued on the date that West Virginia Insurance paid the proceeds from the insurance policy to Mr. Maley. That was the date the proceeds from the policy should have been paid to Firstbank. The circuit court's award of prejudgment interest is based upon Firstbank's assertion that it is entitled to prejudgment interest on the value of the policy from the date the proceeds would have been paid to Firstbank, which would have been February 23, 1987. Once again, we point out that no transcript of the hearing was provided to this Court. In the absence of a transcript, we must rely on the limited

11. The circuit court stated in its final order that "[t]o deny reasonable attorneys' fees would give unfair advantage and leverage to an insurance company because the longer litigation continued the less of a total recovery would be realized by the insured like the [p]laintiff in this case."

12. The list of attorney hours and litigation costs submitted by Firstbank included the hours spent by an attorney, a paralegal and a law

clerk. This amount also included copying charges, postage charges, telephone tolls, deposition transcripts and computer research. *See Rice v. Mike Ferrell Ford, Inc.*, 184 W.Va. 757, 761, 403 S.E.2d 774, 778 (1991).

13. As we noted earlier, it is unclear why West Virginia Insurance paid Mr. Maley $18,000.00 when it appears that the damage to the building exceeded the amount calculated by the company.

record available to us regarding the calculation of the prejudgment interest. We cannot find anything in that record which would justify interfering with the circuit court's determination of the prejudgment interest.[14]

For the reasons set forth herein, we conclude that the order of the Circuit Court of Harrison County is affirmed.[15]

Affirmed.

---

**14.** For recent decisions of this Court discussing prejudgment interest, see *Beard v. Lim,* 185 W.Va. 749, 408 S.E.2d 772 (1991), and *Miller v. Monongahela Power Co.,* 184 W.Va. 663, 403 S.E.2d 406 (1991).

**15.** West Virginia Insurance also raised two other assignments of error: (1) West Virginia Insurance is a farmers' mutual fire association company and the circuit court should not have applied the "valued policy law" contained in *W.Va.Code,* 33–17–9 [1957]; and (2) the plaintiff had a duty to mitigate its damages by foreclosing on the property.

An amicus curiae brief was filed by the West Virginia Association of Mutual Insurance Companies addressing the application of the valued policy law to farmers' mutual fire association companies. The circuit court pointed out in its final order, however, that "[n]o evidence was presented by [West Virginia Insurance] with respect to its incorporation, its licensure, or its filing of approved policy forms with the West Virginia Insurance Commissioner." The circuit court concluded that there was no evidence that West Virginia Insurance was organized or qualified as a Farmers Mutual Fire Association Company.

With respect to West Virginia Insurance's assertion that Firstbank failed to mitigate its damages, the circuit court found that West Virginia Insurance "introduced no credible evidence that [Firstbank] failed to mitigate its damages or that if it did the amount of damages that could have been avoided had mitigation been accomplished." Thus, because no evidence was presented to the circuit court on these issues, we decline to address them.