484 S.E.2d 188

Dante Vincent CAMASTRO, Plaintiff,

v.

Richard J. DLESK, Sharon Dlesk, Sharick, Inc., Defendants and Third–Party Plaintiffs,

v.

CINCINNATI INSURANCE COMPANY, Third–Party Defendant.

No. 23403.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 14, 1997.

Decided March 14, 1997.

Patrick S. Casey, Thomas E. Johnson, Flaherty, Sensabaugh & Bonasso, Charleston, for Third-party Defendant.

Avrum Levicoff, Joseph E. Starkey, Jr., Brown & Levicoff, Pittsburgh, PA, for Defendants.

PER CURIAM:

This case is before the Court on a certified question from the Circuit Court of Ohio County concerning whether an insurer has an affirmative duty to notify the lessors of property that the lessee's liability insurance coverage has been canceled upon termination

of the lease. For the reasons set out below, we answer the certified question in the negative.

JHL Tax Service ("JHL") leased property located at 2080 National Road in Wheeling from Richard and Sharon Dlesk ("the Dlesks" or "the lessors"). The term of the lease was October 15, 1991, to April 30, 1993, with an option to renew and an option to purchase, both requiring two months' advance notice. In the lease, JHL agreed to carry public liability insurance on the leased premises, and to provide the lessors with an insurance certificate within thirty days of the execution of the lease. JHL obtained this insurance by adding the property to a general business owner's policy issued by Cincinnati Insurance Company ("Cincinnati"), naming the Dlesks as additional insureds.

Cincinnati sent the Dlesks a certificate of insurance naming JHL as the insured and the Dlesks as "certificate holder." The certificate reflects an effective date of October 1, 1991, to October 1, 1994. It states, with respect to cancellation, that "the issuing company will endeavor to mail 10 days written notice to the certificate holder named to the left, but failure to mail such notice shall impose no obligation of liability upon the company, its agents, or reps."

JHL did not renew the lease, and moved out of the building sometime before the expiration of the lease on April 30, 1993, leaving only a sign on the front of the building. On the date the lease expired, JHL canceled its insurance on the Dlesks' property. Cincinnati removed the property from JHL's policy, and sent an endorsement to that effect to JHL. The lessors did not receive this notice. JHL asserts, and the lessors do not dispute, that the lessors knew the lease had terminated.

In August 1994, Dante Vincent Camastro filed a civil suit against JHL and the Dlesks, alleging that he sustained injuries on July 24, 1993 (three months after the lease ended), when he slipped and fell on the sidewalk in front of 2080 National Road.[1] The Dlesks filed a third-party action against Cincinnati alleging that it owed coverage for the acci-

dent under JHL's liability policy. JHL was subsequently dismissed from the action by agreement of the parties, as indicated by order dated February 27, 1995. The Dlesks and Cincinnati filed cross motions for summary judgment, and the trial court granted summary judgment in favor of the Dlesks by order dated January 15, 1996. It ruled that Cincinnati had an obligation to notify the lessor of the cancellation of the lessee's insurance, and that failure to provide such notice resulted in the continuation of the Dlesks liability coverage under the Cincinnati policy.

The circuit court thereafter granted Cincinnati's motion to certify the following question to this Court:

> Absent controlling language in a lease or insurance policy, whether an insurance company has a duty to provide to lessors, who have been designated "additional insureds", notice of the cancellation of a business owners' insurance policy of the lessee when the lessee canceled the insurance policy as the result of the termination of the lease between the lessor and the lessee by the normal operation of the lease provisions.

The circuit court answered this question in the affirmative.

 On appeal, Cincinnati assigns as error the circuit court's finding that the Dlesks were entitled to receive notice of cancellation, and its reliance on West Virginia case law regarding standard mortgage clauses. Cincinnati asserts that in the absence of a statute, regulation, or contractual language in the lease or insurance documents, the Dlesks were not entitled to notice of cancellation of JHL's liability coverage.

The issue presented is clearly a question of law, and we therefore review the circuit court's ruling de novo. Syl. Pt. 1, *Chrystal R.M. v. Charlie A. L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). The circuit court cited two cases in support of its conclusion that the insurance company had an affirmative duty to notify the lessors of cancellation. The first, *Firstbank Shinnston v. West Virginia Insurance Company*, 185 W.Va. 754, 408

---

1. Dante Vincent Camastro has not participated in the proceedings on appeal.

S.E.2d 777 (1991), held that a fire insurance company could not remove the lender under a deed of trust from the owner's insurance policy without giving notice to the lender of the cancellation. In that case, a homeowner had agreed through a standard mortgage clause to maintain fire insurance on his home, which was subject to a deed of trust securing a loan from Firstbank Shinnston. After two items of correspondence sent to the bank were returned undelivered to the insurance company, the insurance company unilaterally deleted the bank as an additional insured under the policy. The house burned, and the homeowner collected $18,000 from the insurance company but did not rebuild. As a result, the insurance company canceled the policy. The homeowner also defaulted on his loan. Firstbank Shinnston sought to collect the insurance proceeds from the fire, and the insurance company refused coverage. This Court held on those facts that cancellation of the policy was not effective as to Firstbank Shinnston, because the insurance company failed to notify the bank that its interest as mortgagee was being canceled. *Id.* at 760, 408 S.E.2d at 783.

■ Cincinnati would distinguish this case on several bases. First, the policy in *Firstbank Shinnston* contained a standard mortgage clause, which the Court concluded creates a separate and distinct contract between the lender and the insurer. *See id.,* Syl. Pt.

1. No analogous contract has been implied between insurers and third-party insureds under general liability policies that do not contain such a clause. Second, the cancellation provision in the mortgage clause in *Firstbank Shinnston* required notice to the mortgagee, whereas the lease in this case is silent on the issue and the certificate issued to the Dlesks stated that failure to provide notice of cancellation would not impose any obligation or liability on the insurer. Third, notice of cancellation of property insurance is required by statute, W.Va.Code § 33–17A–4(b) (1996),[2] and no such statute exists with respect to liability insurance. Finally, the lender in *Firstbank Shinnston* had no way of knowing its coverage had been canceled prior to the fire, whereas the Dlesks do not contest Cincinnati's assertion that the lessors were aware that the lease had expired and the tenants had moved out.[3] We agree with the Appellant that *Firstbank Shinnston* should be distinguished from the case before us.

Second, the circuit court cited *Smith v. Municipal Mutual Insurance Company,* 169 W.Va. 296, 289 S.E.2d 669 (1982), in which this Court held that mere mailing of a notice of cancellation of fire insurance to the property owner was not sufficient to cancel his insurance coverage. The Court in *Smith* relied on Code § 33–22–15 (1957), which required "at least five days' written notice to the holder." *Smith* should be distinguished for two reasons: first, it relied on a pertinent

---

**2.** Section 33–17A–4(b) provides:

A notice of cancellation of property insurance coverage by an insurer shall be in writing, shall be delivered to the named insured or sent by first class mail to the named insured at the last known address of the named insured, shall state the effective date of the cancellation and shall be accompanied by a written explanation of the specific reason or reasons for the cancellation.

Under *Firstbank Shinnston,* a mortgage lender is deemed to have a separate contract of insurance with the insurer, and is therefore entitled to notice under this provision. *See* 185 W.Va. at 759–60, 408 S.E.2d at 783.

**3.** In addition, a home mortgage situation must be distinguished from that of a business lease. The primary insured in *Firstbank Shinnston,* the homeowner, had a continued interest in the insured property at the time the insurance company canceled the secondary coverage, and the homeowner remained contractually indebted to

the bank. In the case before us, JHL, the primary insured, had no remaining interest in the property at the time of the cancellation, and had no continuing relationship with the secondary insured. The existence of an insurable interest for purposes of liability insurance does not necessarily require a legal or equitable interest in the insured premises. *See* Lee R. Russ & Thomas F. Segalla, 3 *Couch on Insurance* 3d § 41:25 (1996), and cases cited therein. It does, however, require an insurable interest based on whether the insured may be subject to legal liability. *Id.* Certainly the homeowner in *Firstbank Shinnston* could have been sued if someone had been injured on his premises. In contrast, it may be assumed from the fact that the parties agreed to dismiss JHL from the lawsuit that they also agreed that JHL was not subject to legal liability. This case is therefore also distinguishable from *Firstbank Shinnston* by the fact that the primary insured in the case before us had no insurable interest at the time of the events giving rise to the lawsuit.

statute; and second, it involved notice to the insured, rather than notice to a third-party insured such as the lessors in this case. More to the point is *Laxton v. National Grange Mutual Insurance Company,* 150 W.Va. 598, 148 S.E.2d 725 (1966), a case distinguished by the Court in *Smith.* In *Laxton,* this Court held that actual receipt of a notice of cancellation of an automobile insurance policy was not a condition precedent to cancellation, where the policy provided that it could be canceled by mailing a written notice to the insured at his address shown on the policy and that mailing of such a notice would be sufficient proof of notice. *Id.,* Syl. Pt. 2. *Laxton* stands for the proposition that where the provisions concerning cancellation are clear and unambiguous and not contrary to public policy the terms of the insurance contract should control. *Smith,* 169 W.Va. 296, 303–04, 289 S.E.2d 669, 673 (1982) (McHugh, J., dissenting); *Laxton,* 150 W.Va. 598, 603–04, 148 S.E.2d 725, 729 (1966).

As applied to the facts of this case, *Laxton* supports giving effect to the provision regarding cancellation on the certificate of insurance issued to the Dlesks:

CANCELLATION: Should any of the above described policies be canceled before the expiration date thereof, the issuing company will endeavor to mail 10 days written notice to the certificate holder named to the left, but failure to mail such notice shall impose no obligation of liability upon the company, its agents, or reps.[4]

This provision is clear and unambiguous. The parties have directed us to no statute or public policy[5] contravened by allowing cancellation under such circumstances.[6]

 The lessors nevertheless urge the Court to find that they were entitled to receive notice of cancellation. The Dlesks assert that they had a reasonable expectation of continued coverage, because the certificate of insurance provided to them by Cincinnati showed an effective date of October 1, 1991, to October 1, 1994. This Court has said, "[w]ith respect to insurance contracts, the doctrine of reasonable expectations is that the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." Syl. Pt. 8, *National Mut. Ins. Co. v. McMahon & Sons,* 177 W.Va. 734, 356 S.E.2d 488 (1987). It does not seem reasonable, however, to have expected JHL to continue to carry insurance coverage required by the terms of a lease that was no longer in effect. The lease by its own terms required the lessee to maintain liability coverage "on the leased premises." Such language negates any obligation to provide coverage for the premises after expiration of the lease. In addition, the one-page certificate that the Dlesks rely on for the effective dates of coverage also contained a prominent disclaimer of any obligation to notify the additional insured in the event of cancellation. We therefore conclude that the doctrine of reasonable expectations does not control in this case.

The Dlesks also assert that other jurisdictions have found an affirmative duty to notify, citing especially *John Bader Lumber Company v. Employers Insurance,* 110 Ill. App.3d 247, 65 Ill.Dec. 792, 441 N.E.2d 1306 (1982). In that case, John Bader Lumber Company leased property to American Can Company. American Can obtained liability coverage from Employers Insurance of Wausau for the property subject to the lease.

---

**4.** The one-page certificate also states, "[t]his Certificate is issued as a matter of information only and confers no rights upon the certificate holder."

**5.** Appellees assert that requiring notice of cancellation to additional insureds would protect the innocent victims of personal injuries, presumably because notice would enable the additional insured to obtain liability coverage. In accord with our holding in this case, however, we deem knowledge that the lease has expired to be sufficient to put the lessor on notice that it needs liability coverage.

**6.** The circuit court also based its decision on "the business practice of a triple net lease." Such a lease places the responsibility for taxes, liability insurance, and maintenance on the lessee in exchange for lower rent. Given that the lease had expired by its own terms at the time of the events giving rise to this lawsuit, we fail to see how the nature of the lease could impose on the lessee a continuing obligation to pay insurance premiums and provide liability coverage to the lessor after its expiration.

The building on the leased premises was severely damaged by fire on February 14, 1979. There was evidence that Bader and American Can agreed to terminate the lease after the fire. On April 5, 1979, someone was injured when a wall of the burned building collapsed, and he sued the lessor, Bader. American Can's insurance company refused to defend, saying that its coverage ended when the lease terminated. The Illinois appellate court looked to the certificate of insurance issued to the lessor, Bader. The certificate in that case required ten days' written notice of cancellation to the certificate holder. *Id.* 65 Ill. Dec. at 794, 441 N.E.2d at 1308. Because the lessor had not received such notice, the court found that the policy was still effective on the date of the accident. *Id. Bader* therefore supports not an affirmative duty to notify, but rather enforcement of the cancellation provision on the certificate of insurance. In the case before us, that provision disclaims any duty to notify the Dlesks as additional insureds.

For the reasons articulated above, we conclude that Cincinnati had no affirmative duty in this case to provide the lessors with notice of cancellation of the lessee's liability insurance policy on the leased premises at the expiration of the lease term. The certified question is answered in the negative.

Certified question answered. Case dismissed.