Dale M. BAST, Appellant,

v.

CAPITOL INDEMNITY CORPORATION, et al., Respondents.

No. C9–96–1906.

Court of Appeals of Minnesota.

April 15, 1997.

Ronald R. Frauenshuh, Sr., Frauenshuh, Spooner & Landmark, P.A., Paynesville, for Appellant.

Gregory R. Anderson, Hulstrand, Anderson, Larson, Hanson and Saunders, P.L.L.P., Willmar, for Respondents.

Considered and decided by PETERSON, P.J., and LANSING and CRIPPEN, JJ.

## OPINION

LANSING, Judge.

This dispute between an insurer and a loss payee named in an insurance policy raises issues of whether the payee is entitled to notice of a policy amendment and whether notice of cancellation must be in writing. We hold that because a standard form mortgage clause establishes an independent contract

between an insurer and a named loss payee, the payee as a party to the contract is entitled to notice of material changes in the contract effecting reduced coverage. We further hold that actual notice to the named loss payee satisfies the cancellation notice requirement.

## FACTS

The insurance policy under analysis provides property damage coverage for a commercial building located in Willmar. Dale Bast sold the building by contract for deed to Jeff Weber in April 1992. At the time of the sale, Weber purchased insurance from Capitol Indemnity Corporation, and the policy named Bast as the loss payee. The original policy covered replacement value for damages to the building and had a $5,000 deductible.

On March 10, 1994, Weber endorsed an amendment to the policy changing the coverage from replacement value to actual cash value coverage. The $5,000 deductible remained unchanged. Neither Weber nor Capitol Indemnity informed Bast of the change.

On June 27, 1994, Weber cancelled the insurance coverage effective July 1, 1994. On June 28, 1994, he surrendered the property by quit claim deed to Bast, who recorded the deed the same day. An insurance agent told Bast on June 28, 1994, that the insurance coverage would be cancelled effective July 1, 1994. Bast purchased property damage insurance from a separate insurance company to cover the building effective July 1, 1994.

The roof of the building was damaged in a hail storm on June 25, 1994, and a wind storm on July 4, 1994. The actual cash value of damage to the roof was appraised in October 1994 at $4,122. In May 1996 a second appraisal was made by an umpire who determined that the actual cash value of the damage was $6,320. Because the appraisals considered damage from two separate storms, and because the policy had a per-storm deductible of $5,000, the appraisers concluded that repairs to the building would not exceed the policy deductible, and no payment was warranted.

Bast filed suit against Capitol Indemnity alleging breach of contract for failing to give him notice of the amendment to the policy and refusing to cover damage from the June 25 and July 4, 1994 storms.

On Capitol Indemnity's motion for judgment on the pleadings, the district court converted the motion to one for summary judgment and ruled that Capitol Indemnity had no duty to notify Bast of the amendment. After trial the district court concluded that Bast had actual knowledge of the policy cancellation prior to July 1 and entered judgment in favor of Capitol Indemnity. Bast now appeals.

## ISSUES

I. Is a named loss payee in an insurance policy with a standard form mortgage clause entitled to notice from the insurer when the insured endorses an amendment to the policy?

II. When no express statutory or contractual obligation requires written notice to the loss payee of policy cancellation, does actual notice to the loss payee satisfy the policy cancellation notice requirement?

## ANALYSIS

The issues Bast raises on appeal are issues of law premised on undisputed facts or unappealed factual determinations. When the issues are solely questions of law, appellate courts independently review the district court's determination. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

### I

Bast asserts that he was entitled to notice from Capitol Indemnity of Weber's March 10, 1994 amendment to the policy. Whether the loss payee in an insurance contract is entitled to notice from the insurer when the insured endorses an amendment to the policy is a matter of first impression for Minnesota courts.

There are generally two types of loss payable clauses in insurance contracts involving an interested third party: the standard, union, or New York form; and the open form.

*American Nat'l Bank & Trust Co. v. Young,* 329 N.W.2d 805, 809–10 (Minn.1983).

■ A standard form mortgage clause creates an independent contract between the insurer and the loss payee. Such a contract is not affected by the conduct of the insured. *Id.* at 810 (quoting *Allen v. St. Paul Fire & Marine Ins. Co.,* 167 Minn. 146, 149, 208 N.W. 816, 817 (1926)). The standard form is indicated by language used in the loss payable clause of the contract. That language "will specify * * * [that] the mortgagee [loss payee] shall not be invalidated by the mortgagor's [insured's] acts or neglect. The words 'any acts' as used in a standard mortgage clause do not refer merely to acts prohibited by the contract or to failure to comply with the terms thereof, but literally embrace any act of the mortgagor." *Id.* n. 1 (quoting 11 *George J. Couch, Couch on Insurance 2d* § 42:685, at 344–45 (1963 & Supp.1976)).

■ An open form mortgage clause, in contrast, makes the rights of the loss payee derivative of the rights of the insured. The loss payee " 'stands in the * * * shoes' " of the insured and is subject to all the defenses the insurer may have against the insured. *Id.* at 810 (quoting 5A *John A. & Jean Appleman, Insurance Law and Practice* § 3401, at 282 (1970 & Supp.1981)).

The district court determined that Weber's insurance contract with Capitol Indemnity contained a standard form mortgage clause. Because Capitol Indemnity has not challenged that on appeal, we accept the finding as accurate. *See Carl v. DeToffol,* 223 Minn. 24, 28, 25 N.W.2d 479, 481 (1946) (unless challenged on appeal, findings of fact considered true).

■ When an insurance contract contains a standard form mortgage clause, two contracts are formed by the one document: a contract between the insurer and the insured and an independent contract between the insurer and the loss payee. The terms and conditions of the contract apply equally to the loss payee and the insured, but the loss payee is only liable for the loss payee's own breaches. *American Nat'l,* 329 N.W.2d at 812. In *American National* a bank made a

loan for the purchase of an airplane that was ultimately confiscated by the Colombian government because of involvement in drug trafficking. But the bank, the loss payee, was able to collect on an insurance policy that the plane's purchaser, the insured, had with the insurer despite a clause in the insurance contract absolving the insurer of liability for losses due to illegal activities or losses sustained outside the territorial limits of the policy. The violation by the insured of the conditions of the contract between the insured and the insurer had no effect on the independent contract between the bank and the insurer. *Id.* at 806, 811–12; *see also Farmers State Bank v. Western Nat'l Mut. Ins. Co.,* 454 N.W.2d 651, 653 (Minn.App. 1990) (even when insured misrepresented material facts to insurer, contract not void as to loss payee because contract included standard form loss payable clause protecting loss payee).

■ Because Bast was the loss payee named in an insurance contract with a standard form mortgage clause, Bast had an independent contract with Capitol Indemnity that could not be affected solely by the acts of Weber, the insured.

■ If an insurer substantially reduces the prior insurance coverage provided to the insured, whether through a policy renewal, modification, or endorsement, it must notify the insured of the change in writing. *Canadian Universal Ins. Co. v. Fire Watch, Inc.,* 258 N.W.2d 570, 575 (Minn.1977). Absent notice, a reduction in coverage is void. *Id.* The difference between replacement value and actual cash value of damage to property can be significant and certainly qualifies as a substantial reduction under *Canadian Universal. See, e.g., Midway Nat'l Bank of St. Paul v. Bollmeier,* 474 N.W.2d 335, 340 (Minn.1991) (household exclusion is substantial change in policy requiring notice), *review denied* (Minn. Nov. 22, 1989); *Samuelson v. Farm Bureau Mut. Ins. Co.,* 446 N.W.2d 428, 432 (Minn.App.1989) (procedural change not resulting in reduction of basic coverage did not require detailed notice to insured).

■ Capitol Indemnity amended the insurance policy from replacement value to

actual cash value, a substantial change, without providing written notice to Bast. It is inconsequential that Weber, the insured, requested the amendment. The standard form mortgage clause and Bast's identification as the loss payee created an independent contract between Bast and Capitol Indemnity. That contract could not be changed absent notice, regardless of Weber's acts, including the endorsement of an amendment.

Other jurisdictions have similarly determined that the loss payee in an insurance agreement is entitled to notice from the insurer of substantial changes in policy coverage. See Firstbank Shinnston v. West Virginia Ins. Co., 185 W.Va. 754, 408 S.E.2d 777, 782–83 (1991) (loss payee, by virtue of standard mortgage clause, was "deemed an insured * * * [and] entitled to the standard of notice" applicable to insureds); Kane v. Employer's Ins. of Wausau, 142 Wis.2d 702, 419 N.W.2d 324, 326–27 (App.1987) (named loss payee had independent contract with insurer that, absent notice, remained unaffected by insured's amendment to "material part" of contract shortening period of coverage).

■ We hold that when an insurance policy establishes an independent contract between the insurer and the loss payee through use of a standard form mortgage clause, the loss payee is entitled to notice of any material change resulting in a substantial reduction in coverage, notwithstanding the acts of the insured. Because the amendment from replacement value to actual cash value involved a substantial reduction in coverage, Bast, as the named loss payee, was entitled to notice of the amendment. In the absence of this notice, his independent contract with Capitol Indemnity for replacement value coverage remained unchanged.

## II

■ It follows from our discussion of notice for an amendment that Bast was also entitled to notice when Weber cancelled the insurance coverage on June 28, 1995, effective July 1, 1995. The district court found that Bast had actual notice of the policy cancellation, but Bast contends that *written* notice must be provided. Bast has failed to supply any legal support for his contention, and our holding on amendment notice cannot be read as entitling a loss payee, as a matter of right, to written notice of change or cancellation in an insurance policy.

■ The rationale underpinning our decision requiring notice of amendment is to ensure that the loss payee, the intended beneficiary of an insurance contract, knows about material changes to the policy. If the evidence shows that the loss payee received actual notice of the change, the form of the notice is irrelevant. The longstanding policy in Minnesota has favored actual notice over written notice when contractual or statutory language does not require written notice. See Donarski v. Lardy, 251 Minn. 358, 364–65, 88 N.W.2d 7, 12 (1958) (noting that public policy objective of ensuring adequate coverage requires actual notice to policy holders of changes in coverage); see also State ex rel. Kruse v. Webster, 231 Minn. 309, 313, 43 N.W.2d 116, 119 (1950) (actual notice does not suffice when statute requires written notice).

The insurance contract at issue does not provide for written notice of cancellation to the loss payee. Nor is there any statutory basis for a right to written notice in this context. And the evidence in the record supports the district court's determination that Bast had actual knowledge of the cancellation: a Capitol Indemnity employee testified that she had discussed the cancellation with Bast on June 28, 1994; the record contains a written notation from the same date documenting the conversation; and Bast obtained separate insurance on the property on June 28, 1995, to be effective July 1, 1995. In the absence of statutory or contract language entitling Bast to written notice, the actual notice he received was sufficient to cancel the policy for replacement value effective July 1, 1995. The record indicates that Capitol Indemnity eventually did send written notice to Bast on July 27, 1994, listing August 29, 1994, as the date of cancellation. This notice does not operate to extend the coverage, however, because the policy had already been effectively cancelled as of July 1, 1994, terminating any contractual relation-

ship between Bast and Capitol Indemnity as of that date.

In a final, separate issue, Bast contends that Capitol Indemnity improperly invoked the appraisal procedures required by the insurance contract because the insurer waived its right to arbitration by entering litigation. We disagree.

The right to arbitration may be waived. *City of Savage v. Varey*, 358 N.W.2d 102, 106 (Minn.App.1984), *review denied* (Minn. Feb. 27, 1989). But the key to a valid claim of waiver is the intent of the party. *County of Hennepin v. Ada–Bec Systems*, 394 N.W.2d 611, 613 (Minn.App.1986), *review denied* (Minn. Dec. 17, 1986). And Minnesota favors arbitration as a means of dispute resolution. *Id.*

The record reflects Capitol Indemnity's intention to retain and invoke its right to employ the appraisal procedures in the contract. Two weeks after its answer was filed, Capitol Indemnity moved for judgment on the pleadings arguing, in part, that the dispute must be resolved pursuant to the appraisal process. There are no facts suggesting that Capitol Indemnity voluntarily relinquished its contractual right to arbitrate. Accordingly, Capitol Indemnity did not waive its right to arbitration by defending against Bast's claims in this litigation. Bast also challenges the fairness of the appraisal process, but that issue was not raised in the district court, and we therefore decline to consider it. *See In re K.T.*, 327 N.W.2d 13, 16–17 (Minn.1982) (failure to raise issue before district court generally prevents its consideration on appeal).

## DECISION

Because the named loss payee in an insurance contract with a standard form mortgage clause is entitled to notice of material changes resulting in a substantial reduction in coverage, we reverse the district court's denial of Bast's claim for replacement value coverage. We affirm, however, the court's determination that Bast's actual notice of the policy cancellation effected a cancellation of his contract with Capitol Indemnity.

**Affirmed in part, reversed in part, and remanded.**